368 P.2d 266

**FREDERICK MAY & COMPANY, Inc., a corporation, Plaintiff and Appellant,**

**v.**

**W. Prescott DUNN and Tracy Collins Trust Company, a banking corporation, Defendants and Respondents.**

No. 9356.

Supreme Court of Utah.

Jan. 24, 1962.

White, Arnovitz & Smith, Salt Lake City, for appellant.

Mulliner, Prince & Mangum, James W. Beless, Jr., Salt Lake City, for respondents.

WADE, Chief Justice.

Plaintiff Frederick May & Company appeals from a summary judgment dismissing its complaint seeking a broker's commission from defendant, W. Prescott Dunn, respondent here, for the sale of the outstanding capital stock of Keith O'Brien Company to Sperry and Hutchinson Company, dealers in S & H Green Stamps. Frederick May is the president and main owner of the Frederick May & Company with offices in New York City. W. Prescott Dunn was the president of Keith O'Brien Company, who, with his family and relatives, owned the outstanding capital stock of that company, which was sold to S & H. Dunn was also a stockholder and director of defendant, Tracy Collins Trust Company, a banking corporation.

About May 6, 1953, at Dunn's request, May came to Salt Lake City, where he met with Dunn and Mr. Collins of Tracy Collins Trust Company. At that meeting an oral agreement was reached that the Frederick May Company and Tracy Collins Trust Company would act as co-brokers for the sale of the outstanding capital stock or assets of Keith O'Brien Company for a $25,000 commission to be divided equally between them. Immediately thereafter May commenced making contacts all over the United States to find a buyer. He met a number of prospective buyers at different times in Salt Lake City.

Both May and Dunn were acquainted with various officers of S & H through business deals before the May, 1953, contract. At least three times after the May, 1953, contract, May contacted representatives of S & H at their request, communicated to him through Dunn. Once in 1954, when May was negotiating with Mr. Guberman, who, through May as broker, had bought and then owned a business in Colorado Springs with financial backing from S & H. The president of S & H asked May to discourage Guberman from

trying to buy Keith O'Brien Company. Two other times May contacted S & H personnel at their request, communicated to him by Mr. Dunn, in connection with the sale of the Keith O'Brien stock to a Mr. Riordan, who was relying on S & H backing to make the deal.

The deal with Riordan did not materialize because S & H refused to furnish him enough money, which coupled with his own resources, would enable him to buy that business. The last of these negotiations occurred in Salt Lake City from June 12 to 19 in 1956. During these negotiations two representatives of S & H were present, and May furnished Riordan and the S & H representatives with a written prospectus and much information emphasizing the advantages of making this purchase. May, however, conceded that he never considered S & H as a prospective purchaser, and that he never negotiated with it as such or proposed or offered to sell directly to that company. Thereafter May continued to try to interest other prospective purchasers.

Dunn testified that in his earlier contacts with S & H representatives, he asked, "(W)hy don't you buy the business?" and was told, "(W)e might do that." Within

a week or so after June 19, 1956, Dunn received a phone call from the S & H New York office indicating an interest in purchasing the Keith O'Brien stock. After considerable negotiation, the sale was consummated July 27, 1956. Thereafter about July 31, 1956, Dunn called May in New York and told him they had decided to keep the stock and agreed to send him $4,500 in addition to $500 previously paid for his efforts in trying to make the sale. May had heard nothing of the sale to S & H and so he agreed to this proposition on condition that if they later sold to anyone suggested by him, he would be entitled to the agreed commission. Dunn also paid Tracy Collins $11,000 for this sale to S & H. On November 1, 1956, May first heard through Riordan that S & H had purchased the Keith O'Brien stock and shortly thereafter he instituted this action.

■ To sustain a summary judgment, the pleadings, evidence, admissions and inferences therefrom, viewed most favorably to the loser, must show that there is no genuine issue of material fact, and that the winner is entitled to a judgment as a matter of law.[1] Such showing must preclude, as a matter of law, all reasonable

1. Utah Rules of Civil Procedure, Rule 56 (c) and annotations in pocket supplement in U.C.A.1953; also Daum Const. Co. v. Child, 122 Utah 194, 247 P.2d 817; Abdulkadir v. Western Pac. R. Co., 7 Utah 2d 53, 318 P.2d 339; Bullock v. Deseret Dodge Truck Center, Inc., 11 Utah 2d 1, 354 P.2d 559; Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344; Tanner v. Utah Poultry & Farmers Cooperatives, 11 Utah 2d 353, 359 P.2d 18.

possibility that the loser could win if given a trial.

May's deposition clearly shows that the oral brokerage contract contains no agreement that Dunn, the owner, would not sell the Keith O'Brien Company himself without paying the brokerage commission. It is generally recognized that a broker's authority to sell property is not exclusive and does not require the payment of the commission to the broker upon a sale not procured by him, unless made so by the contract of employment in clear and unequivocal terms or by necessary implication.[2]

From the evidence it is clear that this brokerage agreement did not give to the brokers an exclusive right to sell this property. The contract does not limit the time within which plaintiff could make the sale and the sale was made more than three years after the contract was entered into. It would be very unusual for parties by an oral contract to grant to the broker the right to collect the commission from the owner if the owner made the sale, without any limitation of the time within which such sale might be made. Further, there is no evidence that such was the agreement of the parties. By his deposition in answering the questions whether the oral agreement gave an exclusive right to make the sale, May said: "I would say on a moral basis, yes, but I wouldn't say that he just outright agreed that we were his exclusive agents." Since May admitted that there was no outright agreement of exclusive agency, we conclude that there was no reasonable basis to support a finding of fact that this contract granted to the brokers an exclusive right to sell this property or collect a fee therefor if the property was sold by the owner.

This brokerage contract is what is called a general listing agreement which leaves the owner free to sell the property himself as long as he does so in good faith.[3] Under such contracts a broker must be the procuring cause in order to be entitled to a commission for such sale. The cases use many different words in conjunction with, or in place of, the words, "procuring cause" to indicate the necessary extent the broker must induce the sale in order to be entitled to a commission, such as "proximate cause," "actuating cause," "moving cause", and the like; all meaning about the same thing. However, the extent to which the broker's efforts must induce the sale depends on the terms used in the contract and the understanding and intention of the parties in making such agreement and the facts and circumstances of the case. Usually, whether the broker first approaches, or brings to the attention of the buyer that the property is for sale, or brings the buyer into the picture, has con-

**2.** Tetrick v. Sloan, 170 Cal.App.2d 540, 339 P.2d 613, 617.

**3.** Tetrick v. Sloan, footnote 2, supra.

siderable weight in determining whether the buyer is the procuring cause of the sale.[4] The fact that the sale was consummated without participation by the broker in the final negotiation does not preclude him from recovering his commission if the sale was otherwise procured by him.[5]

 In this case Dunn, in his deposition, testified that he "had the understanding that anyone that Mr. May brought into the picture, that resulted in the sale of the capital stock of Keith O'Brien, Inc., he, [May] was to receive one-half of the commission paid for the sale, but only in case he brought the person in." He further stated that, "if it were sold locally, or sold by someone he [May] had nothing to do with, he was not to participate."

This case presents an unusual factual situation. The evidence discloses that S & H was not brought into the picture by May, although there was considerable negotiation between May and representatives of S & H, and both May and Dunn had had previous dealings with representatives of S & H. Each phase of the negotiation between May and S & H representatives was initiated by S & H sending word through Dunn asking May to get in touch with the S & H representatives. This is true, although S & H and May & Company both had offices in New York City, and Dunn's office was in Salt Lake City. So the contact of May with S & H was always initiated through Dunn. Further, May never offered to sell this property to S & H, nor did he ever consider S & H as a prospective purchaser thereof. All of the negotiations between them were on the basis that S & H was only a prospective financial backer of another person who was interested in making the purchase. However, the negotiations on that basis were quite extensive. We know of no case holding that a broker was the procuring cause where he merely negotiated with the purchaser only as a prospective backer of another prospective purchaser.

There are, however, cases which hold that where a broker initiates negotiations to sell the listed property to one party, who thereafter organizes a group of persons, and thereafter the group makes the purchase directly from the owner, a question of fact is presented on whether the purchasers were brought into the picture

4. Tetrick v. Sloan, note 2; Hayutin v. De Andrea, 139 Colo. 40, 337 P.2d 383; Wood v. Hutchinson Coal Co., 4 Cir., 176 F.2d 682; Clark v. Ellsworth, 66 Ariz. 119, 184 P.2d 821; Nelson v. Mayer, 122 Cal. App.2d 438, 265 P.2d 52; Parks v. Underwood, Tex.Civ.App., 280 S.W.2d 320; Rose v. Hunter, 155 Cal.App.2d 319, 317 P.2d 1027; Shelton v. Tapley, Okl., 329 P.2d 672. Also 12 C.J.S. 207–212 Brokers Sec. 91.

5. See note 4.

by the broker and whether the broker was the procuring cause of the sale.[6] Such cases are distinguishable from this case where the evidence precludes all reasonable basis in fact which would reasonably support a finding that May brought S & H into the picture or that he negotiated with that company to sell the property to it. So we conclude that there was no material issue of fact on whether May was the procuring cause of the sale, and defendant was entitled to a judgment as a matter of law.

■ There is nothing in the argument or the record here which indicates that other evidence would be produced if the issues of fact were tried. We suggest that under such conditions it would be a wise policy for the trial court to deny summary judgment where such complicated legal questions are presented and determine the issue of fact by trial. If such had been the procedure in this case, on appeal to this court, we would be required to review the evidence in the light most favorable to the trial court's finding. Whereas, in an appeal from a summary judgment, we are required to review the evidence in the light most favorable to the losing party. In such cases that procedure might prevent a new trial and thus conserve the time of the court and the parties in doing so.

The summary judgment granted by the court in favor of W. Prescott Dunn is hereby affirmed, and the case is remanded with instructions that the complaint of the appellant in this action against W. Prescott Dunn be dismissed with prejudice. Costs to respondent.

McDONOUGH, CALLISTER and CROCKETT, JJ., and JOSEPH G. JEPPSON, District Judge, concur.

HENRIOD, J., not participating.

---

6. Hudgens v. Caraway, 55 N.M. 458, 235 P.2d 140; Thornton v. Forbes, 326 Mass. 308, 93 N.E.2d 742; White v. Grovier, 237 Iowa 377, 21 N.W.2d 769, 164 A.L.R. 943; also annotation of this question 164 A.L.R. 949–952.