Michio TOMINO, Plaintiff and Respondent,

v.

GREATER PARK CITY COMPANY, a Utah Corporation, Defendant and Appellant.

No. 14835.

Supreme Court of Utah.

Oct. 12, 1977.

F. S. Prince, Jr. and J. Rand Hirschi of Prince, Yeates, Ward & Geldzahler, Salt Lake City, for defendant and appellant.

Gordon L. Roberts and David S. Dolowitz of Parsons, Behle & Latimer, Salt Lake City, for plaintiff and respondent.

HALL, Justice: ·

This appeal is from a judgment in favor of plaintiff, assignee of Development Services Incorporated, purchaser of certain real property in Park City, Utah, situated adjacent to a ski-run area and suitable for construction of a hotel facility. Affirmed with costs to plaintiff.

The contract which is the subject of this litigation is a comprehensive legal instrument, and its language skillfully and carefully details the specific intentions of the parties rather than creates ambiguities which would otherwise justify the use of parol evidence to prove such intentions.

This case substantially revolves about paragraph 26 of the contract which is the most significant and dispositive of this litigation. Said paragraph, the abstracted controlling part thereof, reads as follows:

26. It is the intention of the parties that the Inn and all other facilities constructed by Purchaser upon the Subject Property will be operated pursuant to a franchise granted by Sheraton Inns, Inc. . . . Purchaser agrees that it will not commence construction upon the Subject Property unless and until such franchise or a comparable franchise is obtained and a copy of the franchise agreement is delivered to G.P.C.C. . . . In the event that such franchise or a comparable franchise is not obtained prior to June 1, 1974, Purchaser shall have the *right,* upon written notice to G.P.C.C. given not later than *June 15, 1974,* to reconvey the Subject Property to *G.P.C.C., in which event G.P.C.C. shall be obligated,* promptly following such termination, to refund to Purchaser all sums theretofor paid by Purchaser to G.P.C.C. as purchase price for the Subject Property pursuant to Paragraph 2 hereof, *less a sum equal to interest on said purchase price* from the date hereof to the date of such termination at the prime commercial rate established by Chase Manhattan Bank, N.A., from time to time during such period. [Emphasis added].

We are of the opinion that the language is clear and there is little persuasiveness in the assertions of defendant 1) that of noncompliance on the April 30, 1974 "closing date" (which the record discloses was extended to July, 1974, for a $20,000 payment to and acceptance by G.P.C.C.), 2) that there was a lack of "good" faith on the part of Development Services (while there is always an implied mutual covenant of good faith, the contract imposed no affirmative duty to obtain a franchise, and the trial court so found), 3) that Development Services actually had a franchise before June 1, 1974 (which the record does not reflect), 4) that Development Services acted in a fraudulent manner (the trial court finding to the contrary and is amply supported by the record), 5) that the contract was not a mere option (a contention which the trial court found wanting and with which we agree), and 6) that Development Services never intended to go through with the contract (which is not supported by the facts).

The controversy in this case stems from the assertion in defendant's answer pleading a breach of contractual "good faith" duty to obtain a franchise. Such precipitated a motion for summary judgment which was granted on that point, the court saying the contract spoke for itself and that its language permitted a right to terminate at a time certain.

An intermediate appeal to this court ensued, was dismissed, and the matter was remanded for further proceedings. Shortly thereafter, defendant sought and obtained different counsel. Permission was given to amend the complaint which was done and such occasioned various motions for partial judgment and for the taking of depositions which were denied as were similar motions made previously to other judges of the court favoring plaintiff's contentions.

At the time of trial, although matters previously ruled upon and disposed of were pressed by defendant over the objection of plaintiff, the court nevertheless, however wisely, allowed both parties to introduce evidence and confront witnesses thereon. In this regard, four district court judges in all, on separate occasions, conducted hearings on the matters presented by the procedural maneuvering, all of which resulted in sustaining the contractual and procedural concepts advanced by plaintiff.

There are a number of clear circumstances that compel us to affirm with respect to the collective conclusions of the four district judges which are based upon competent, substantial and admissible evidence. Such are abstracted as follows:

1. Paragraph 26 of the contract is not obligatory, rather, it reserves to the purchaser an alternative course, (a) to carry on with the promise to purchase, or (b) not buy and suffer approximately 20% interest payment, not on the contingency of "good

faith" in trying to get a Sheraton Hotel franchise, but in consideration of the contractual right to tie up real property for a specified time. The contract terminology is absolute and hence requires no re-writing by this court adding terms which the parties themselves felt inappropriate.[1] In clear language the contract provides for the right to purchase if a franchise is obtained and if not, to pay 20% interest on the purchase price for the 3 to 4 months the property is held, plus 6% interest on the $125,000 previously paid, all of which totals a forfeiture to seller of some $25,000. To adopt defendant's theory of retention of the $125,000 paid on the contract as further liquidated damages, after having had the use of said funds during said period of time as well, collides head on with the prior pronouncements of this court pertaining to such matters of forfeiture.[2]

 2. The claim of forfeiture that defendant asserts arose out of failure to close on April 30, 1974, is captious since closure was deferred for a consideration paid and accepted.

3. To defend, as defendant urges on the ground of lack of good faith in getting a franchise seems superficial. $7,500 was expended trying to acquire it. An additional $125,000 was paid to defendant, $20,000 of which was to secure an extension of time to perform. Also, about $4,000 was expended for pre-construction costs, plus the fact that defendant had the use of plaintiff's payment of some $100,000 for about four months. The record does not support the claimed lack of sincerity and the forfeiture of the plaintiff amply satisfies the terms of the contract and justified the lower court's judgment.

The contract is obviously one negotiated between the parties in some detail. It is lengthy and also obviously drafted by those well-trained in the law. It is not the work of novices. A comparison of the various paragraphs reveals the drafters clearly knew the language necessary to require mandatory action since it is present in some and not others. Significantly, it is absent in Paragraph 26. Nothing therein *requires* a franchise to be obtained. Its terms are clear and not subject to extrinsic evidence.

ELLETT, C. J., CROCKETT and MAUGHAN, JJ., and HENRIOD, J., retired, concur.

WILKINS, J., having disqualified himself, does not participate herein.

---

1. *Ephraim Theatre v. Hawk*, 7 Utah 2d 163, 321 P.2d 221 (1958); *Carlson v. Hamilton*, 8 Utah 2d 272, 332 P.2d 989 (1958).

2. *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952).