Allen W. DOTY, et al., Plaintiffs and Respondents,

v.

TOWN OF CEDAR HILLS, a municipal corporation, Utah Boundary Commission, a political subdivision of Utah County, State of Utah, Defendants and Appellants.

No. 17995.

Supreme Court of Utah.

Nov. 23, 1982.

Robert Fillerup, Orem, Brian C. Harrison, Provo, for defendants and appellants.

Wayne B. Watson, Orem, for plaintiffs and respondents.

DURHAM, Justice:

In this action, the plaintiffs below sought to have the annexation of an area known as Manila Phase I by the defendant, Town of Cedar Hills (hereinafter "Cedar Hills"), declared void due to procedural defects in the annexation process. The trial court granted the plaintiffs' Motion for Summary Judgment, based on its findings that Cedar Hills adopted the annexation ordinance prior to its adoption of the policy declaration.

Subsequently, based on Rule 59 of the Utah Rules of Civil Procedure, Cedar Hills filed a Motion to Amend Judgment or for a New Trial, alleging newly discovered evidence and error in law. Cedar Hills now appeals from the trial court's denial of its motion, claiming that such denial was an abuse of discretion and an error of law, and that Cedar Hills has substantially complied with the requirements of U.C.A., 1953, §§ 10–2–401 to –423 (Supp.1981). We reverse the judgment and remand this case for a trial on the issues of actual and/or substantial compliance.

During April, May and June of 1979, Cedar Hills received petitions for annexation of an area known as Manila Phase I. On June 13, 1979, after proper notice and public hearings, Cedar Hills adopted a Master Annexation Policy Declaration. Pursuant to the petitions for annexation, Cedar Hills, on July 30, 1979, published in The Daily Herald newspaper notice of the public hearing scheduled for September 12, 1979, to consider "the annexation Policy Declaration and Petition for Annexation of the ... property ... referred to as the Manila Phase I annexation." On August 24, 1979, notice of the hearing and a copy of the proposed Manila Phase I policy declaration were delivered to all affected entities and to the Utah County Boundary Commission. This proposed policy declaration was not the same as the Master Annexation Policy Declaration referred to earlier. Rather, it was a specific document which the defendants claim met all of the requirements of U.C.A., 1953, § 10–2–414 (Supp.1981). In accordance with such notices, a hearing was held on September 12, 1979, to consider the annexation of Manila Phase I.

On September 14, 1979, the City of Pleasant Grove (hereinafter "Pleasant Grove") filed a protest with the Utah County Boundary Commission (hereinafter "Boundary Commission") protesting Cedar Hills' proposed annexation of Manila Phase I. The Boundary Commission informed Cedar Hills on September 17, 1979, of the protest filed by Pleasant Grove and that it had assumed jurisdiction of the dispute regarding the proposed Manila Phase I annexation pursuant to U.C.A., 1953, § 10–2–406(1) (Supp.1981). After conducting several public hearings, the Boundary Commission, on November 15, 1979, approved the proposed policy declaration regarding the annexation of Manila Phase I, with some modification as to the total area. However, the Boundary Commission did not issue its official written findings dismissing Pleasant Grove's protest and approving Cedar Hills' proposed annexation until December 6, 1979.

The City Council of Cedar Hills held a meeting on November 21, 1979, at which Cedar Hills now alleges that it properly adopted both the draft policy declaration and a Resolution for Annexation pertaining to Manila Phase I. However, the documents filed by Cedar Hills with the Utah County Recorder demonstrate that the Resolution for Annexation bears the date of November 21, 1979, whereas the Policy Declaration is dated November 23, 1979. Both resolutions bear the caption "Resolution No. 11–21–79B" and were recorded with the Utah County Recorder on December 11, 1979.

On May 13, 1980, as residents and landowners in the Manila Phase I area, the plaintiffs filed suit against both Cedar Hills and the Boundary Commission, claiming that the annexation of Manila Phase I was null and void due to various errors in the annexation process. On January 30, 1981, the plaintiffs' Motion for Summary Judgment was heard. The plaintiffs argued that the dates of the recorded documents showed that the annexation had preceded the adoption of a specific policy declaration, which the plaintiffs alleged is procedurally deficient under U.C.A., 1953, §§ 10–2–414 and –416 (Supp.1981). The trial court granted the plaintiffs' Motion for Summary Judgment based on its findings that Cedar Hills had in fact annexed Manila Phase I on November 21, 1979, but had not adopted a specific policy declaration until November 23, 1979.

On April 6, 1981, Cedar Hills filed a Motion to Amend Judgment or for a New Trial

based on Rule 59 of the Utah Rules of Civil Procedure, alleging newly discovered evidence and error in law. In support thereof, Cedar Hills filed the affidavits of five Town Council members who were present at the November 21, 1979 meeting. In each affidavit, the affiant swore that the annexation and policy declaration were both passed on November 21, 1979, and that the discrepancy in the dates was merely a clerical error. In addition, Cedar Hills filed the affidavit of Linda Adams who swore that (1) she had taken the minutes of the November 21, 1979 meeting, (2) she did not learn until April 20, 1981, that anyone needed those minutes, (3) she filed those minutes in a place where such minutes were not normally filed, and (4) such minutes demonstrate that the annexation and policy declaration were both adopted on November 21, 1981. Despite Cedar Hills' urging that the discrepancy in dates was merely a clerical error, the trial court denied Cedar Hills' Motion to Amend Judgment or for a New Trial.

■ On appeal, the defendant argues that its Motion to Amend Judgment or for a New Trial should have been granted under Rules 59(a)(4), newly discovered evidence, and 59(a)(7), error in law, of the Utah Rules of Civil Procedure. This Court has previously stated that "[o]rders granting or denying motions for a new trial will not be reversed by this Court unless there has been a manifest abuse of discretion." *Schmidt v. Intermountain Health Care, Inc.,* Utah, 635 P.2d 99, 101 (1981). *Accord Lembach v. Cox,* Utah, 639 P.2d 197 (1981). To be entitled to an amended judgment or a new trial based on newly discovered evidence, the defendant must show that:

> (a) there is material, competent evidence which is in fact newly discovered; (b) by due diligence the evidence could not have been discovered and produced at trial; and (c) the evidence must not be merely cumulative or incidental but must be of sufficient substance that there is a reasonable likelihood that with it there would have been a different result.

*Gregerson v. Jensen,* Utah, 617 P.2d 369, 372 (1980). The difficulty with the defend-

ant's contention is that it has failed to show that it exercised due diligence to discover the alleged new evidence which it arguably had in its possession the entire time. The absence of due diligence on the defendant's behalf supports the trial court's denial of the defendant's motion. *See Shields v. Ekman,* 67 Utah 474, 248 P. 122 (1926). Moreover, whether the above requirements have been satisfied "rests largely within the discretion of the court, and unless there is a plain showing of abuse, his action will not be disturbed." *Universal Investment Co. v. Carpets, Inc.,* 16 Utah 2d 336, 340–41, 400 P.2d 564, 568 (1968). In the present case, we are not persuaded that the trial court abused its discretion in denying the defendant's motion which alleged newly discovered evidence.

However, with respect to the defendant's motion claiming error in law, two questions emerge from the parties' contentions which remain to be answered. First, the question arises as to whether it was necessary for an annexation policy declaration to be *adopted* at, or prior to, the public hearing on September 12, or whether the existence and publication of a draft proposal was sufficient at that time under U.C.A., 1953, § 10–2–414 (Supp.1981). Second, if section 10–2–414 had been complied with prior to November 21, the question arises as to whether it was error or an abuse of discretion for the trial judge to deny the defendants an opportunity to litigate the issue of actual or substantial compliance with Utah's annexation statute in its adoption of the policy declaration and annexation ordinance.

■ The answer to the first question requires a close examination of section 10–2–414. The first paragraph of that statute states in pertinent part: "Before annexing unincorporated territory . . . a municipality shall . . . adopt a policy declaration . . . ." U.C.A., 1953, § 10–2–414 (Supp.1981). The statute then sets forth with considerable specificity the necessary contents of the policy declaration. Further, the last paragraph provides:

Before adopting the policy declaration the governing body shall hold a public hearing thereon. At leasts 30 days prior to any hearing, notice of the time and place of such hearing and the location where the draft policy declaration is available for review shall be published in a newspaper of general circulation in the area proposed for expansion except that when there are 25 or fewer residents or property owners within the affected territory, mailed notice may be given to each affected resident or owner. In addition, at least 20 days prior to the hearing, mailed notice and a full copy of the proposal shall be given to the governing body of each affected entity and to the local boundary commission. The policy declaration, including maps, may be amended from time to time by the governing body after at least 20 days' notice and public hearing. When a policy declaration is prepared in response to a petition, the municipality may require the petitioners to pay all or part of the costs of its preparation.

*Id.* This language demonstrates that the statute does not contemplate the *adoption* of the policy declaration until a draft proposal of it has been carefully considered, publicly discussed, and modified as necessary. Therefore, the fact, as found by the trial court and urged by the plaintiffs on this appeal, that there was no policy declaration *adopted* for the annexation in question at the time of the September 12 hearing, is irrelevant. The statute does not require adoption before public hearings. Rather, it contemplates discussion and criticism at public hearings from affected entities, residents and landowners prior to the adoption of the proposed policy declaration.

The record demonstrates beyond question that a proposed policy declaration was prepared and drafted pursuant to section 10–2–414, and that it was the subject of consideration at the public hearing on September 12, 1979, and at the Boundary Commission hearing on November 15, 1979. For example, the minutes of the latter meeting recite:

Next we have a copy of Cedar Hills' policy declaration outlining the various aspects of the annexation proposal including the effects that it would have. It is broken down into three parts, stating the purpose of the annexation, the map of the area to be annexed and then a statement of conditions and criteria pursuant to which Cedar Hills will consider the annexation.

The minutes of the Boundary Commission meeting also state:

It is stated in the Cedar Hills policy declaration that the area proposed to be annexed is contiguous with the boundaries of Cedar Hills . . . . It also stated in the policy declaration [that] the area proposed to be annexed is consistent with the master policy declaration previously developed by Cedar Hills.

Thus, when the plaintiffs argue to this Court that "there was no policy declaration" before the public and the Boundary Commission, they appear to mean no "adopted" policy declaration. We repeat that this argument is irrelevant and we therefore reject it.

■ The remaining issue focuses on the discrepancy in the dates of the resolutions adopting the annexation ordinance and the policy declaration which had been approved in its draft form by the Boundary Commission. If the defendants could show either actual or substantial compliance with Utah's annexation statute, the annexation would have to be upheld. *See, e.g., Sweetwater Properties v. Town of Alta,* Utah, 622 P.2d 1178 (1981), *modified on rehearing,* 638 P.2d 1189 (1981).

■ Thus, for two reasons, it was an abuse of discretion to deny the defendant's Motion to Amend Judgment or for a New Trial which claimed error in law. First, the granting of summary judgment against the defendant on the irrelevant finding that the defendant did not adopt a specific policy declaration prior to or at the September 12 hearing was an error of law. Second, the granting of summary judgment against the defendant on the finding that the Resolution for Annexation bears the date of No-

vember 21, 1979, whereas the Policy Declaration is dated November 23, 1979, was also error. Both resolutions bear the caption "Resolution No. 11–21–79B," which in and of itself raises a genuine issue of material fact regarding the date of their adoption, thereby precluding summary judgment. *See* Utah R.Civ.P. 56(c). *See, e.g., Frederick May & Co. v. Dunn,* 13 Utah 2d 40, 368 P.2d 266 (1962). The trial court should have conducted an evidentiary hearing with respect to the circumstances surrounding the November 21 meeting to determine whether the defendant had actually or substantially complied with Utah's annexation statute. Thus, because of the errors of law by the trial court in granting summary judgment against the defendant, the subsequent denial by the trial court of the defendant's Motion to Amend Judgment or for a New Trial was an abuse of discretion which compounded rather than cured the original errors.

We therefore reverse the judgment and remand this case for a trial on the issues of actual and/or substantial compliance, and on any remaining claims or disputes that may exist between the parties. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.