**HAL TAYLOR ASSOCIATES, a Utah corporation, Plaintiff and Appellant,**

v.

**UNIONAMERICA, INC., a corporation, aka Westmor; Ramshire, Inc., a corporation; William R. Stevenson; Park City Reservations, a corporation, dba Skyline Realty; Harry F. Reed; and Gary Cole, Defendants and Respondents.**

No. 17359.

Supreme Court of Utah.

Dec. 14, 1982.

Kent B. Linebaugh, Salt Lake City, for plaintiff and appellant.

James A. Boevers, F.S. Prince, Jr., Stephen G. Crockett, Salt Lake City, for defendants and respondents.

DURHAM, Justice:

This case is an appeal by the plaintiff/appellant from a judgment by the Third District Court for Summit County following a trial to the court. The district court awarded to the plaintiff, Hal Taylor Associates (HTA), a real estate listing broker's commission of 6% on the sale of defendant Unionamerica's real property at the price of $1.6 million, and awarded 60% of that commission to defendant Park City Reservations (PCR) as the selling brokers in the transaction.

In 1977, HTA and Unionamerica settled a previous dispute with a Settlement Agreement dated February 17, 1977. This agreement specified that for the following five years, Unionamerica would enter into "exclusive listing agreements" with HTA for the sale of its Summit County properties, that HTA would perform the "usual real estate broker activities," and that HTA would receive a commission of 6%. The agreement then stated that: "Taylor will further agree to a fee-splitting arrangement giving 60% to the selling broker and 40% to the listing broker." The Agreement was signed by William R. Stevenson for Unionamerica and by Hal Taylor for HTA. Within hours, Unionamerica and HTA entered into a listing agreement for a 10.5 acre piece of property known as the "Village Land" in Park City. This form agreement made HTA the listing broker but did not mention the 60/40 split provided for in the Settlement Agreement. At that time, such a splitting of the broker's commission was the usual practice in Park City when the property was sold by a broker other than the listing broker. The Settlement Agreement was silent as to whether Unionamerica was obligated to refer all "walkins"—prospective buyers who voluntarily

approach the owner—to HTA. In a pretrial order, the court specifically found that there was no express or implied agreement regarding "walk-ins" in the Settlement Agreement.

On October 3, 1977, Mr. and Mrs. Jack Davis traveled from California to Park City to see the Village property. They had heard of the property from one of Unionamerica's officers in California. Arrangements had been made through Unionamerica for Stevenson, a Unionamerica agent, to meet the Davises in Park City. Stevenson called HTA, but Taylor was out of town. Stevenson then called PCR and arranged to have its representatives meet with him and the Davises. The initial meeting and viewing of the property took place on October 4, 1977. On October 8, 1977, PCR notified HTA that they had shown the Village property to a prospective buyer without mentioning to HTA that the prospective buyer had been referred by Unionamerica. A week later, after the Davises had orally expressed a desire to buy the property, PCR asked for and received from Taylor an oral confirmation of the 60/40 split in the event of a sale.

On October 17, 1977, the PCR representatives went to California where they negotiated an Earnest Money Agreement which was signed by the buyer and Unionamerica on the same day. On October 19, 1977, this agreement was delivered to Taylor who then asked how PCR had found the buyer. The PCR representative told Taylor that Davis had been contacted while skiing in Park City. Taylor subsequently learned, however, that the Davises had been referred to PCR by Unionamerica. On October 24, 1977, Taylor notified PCR and Unionamerica that he felt HTA was entitled to the entire 6% commission because Unionamerica should have referred the buyer to HTA.

Later in the day on October 24, 1977, the parties and Mr. Davis met in the offices of Unionamerica's attorneys to sign a real estate agreement for the sale of the property. Paragraph 13 of the agreement provided:

13. *Broker's Commission.* The parties hereto agree that at the time of initial closing of this transaction, the entire broker's commission ... shall be due and payable by Seller, said commission being in the amount of $96,000. The parties determined that $57,600 of this commission shall be payable to [PCR], the selling broker, and $38,400 of this commission shall be payable to Hal Taylor & Associates, the listing broker. Should any dispute arise between the brokers, the entire commission shall be retained by an escrow agent in an interest bearing account until settlement or resolution of the matter by the brokers.

Apparently, there was heated discussion of this provision which resulted in conflicting testimony at trial. The defendants asserted that on behalf of HTA, Taylor orally agreed to paragraph 13; Taylor claimed that he agreed only to the sale of the property but that he specifically disagreed with paragraph 13. The trial court made no finding with regard to the existence of an agreement. In any event, Taylor left the meeting without signing the agreement.

At the time of the "initial closing" in May of 1978, Unionamerica placed the entire $96,000 commission in an interest bearing escrow account. Taylor and HTA filed suit on June 15, 1978. Until the defendants filed their answers, none of the parties ever contended that HTA was not entitled to at least 40% of the commission.

At trial, the plaintiffs argued that the Settlement Agreement between Unionamerica and HTA was orally modified so that Unionamerica was obligated to refer "walk-ins" to HTA; that regardless of any modification, Unionamerica had a fiduciary or good faith duty to do so; that PCR breached a duty to HTA by its concealment of Unionamerica's referral; that the defendants conspired in order to harm HTA; that for lack of capacity, PCR could not counterclaim for 60% of the commission because PCR had failed to file an assumed name certificate authorizing PCR to do business as Skyline Realty, under which name PCR had acted; and that Unionamerica had

breached its agreements with HTA and acted unreasonably and in bad faith when it held the entire commission in escrow.

In its Findings of Fact and Conclusions of Law, the trial court found: that the Settlement and Listing Agreements between Unionamerica and HTA were not orally modified, nor did they contain any express or implied provision requiring Unionamerica to refer "walk-ins" to HTA; that there was no factual basis for finding any conspiracy, breach of a duty to act in good faith, breach of fiduciary duty, or any other tort against any party; that by waiting until almost the close of trial, HTA waived the defense of lack of capacity against PCR's counterclaim for 60% of the commission; and that Unionamerica acted reasonably by placing the entire commission in escrow. The judgment awarded the entire 6% commission to HTA, awarded 60% of that commission to PCR from HTA, and awarded no attorney's fees to any party.

The plaintiff and appellant, HTA, raises four points on appeal. First, HTA claims that the trial court erred in awarding a selling broker's commission to PCR because (a) there was insufficient evidence to establish that PCR was the "procuring cause" of the sale and (b) PCR's lack of capacity should have barred its claim. Second, even if PCR was entitled to 60% of the commission from HTA, HTA claims that it was entitled to compensatory damages from Unionamerica in an amount equal to that awarded to PCR because (a) Unionamerica breached a fiduciary duty to HTA, and (b) there was an implied agreement that Unionamerica would refer "walk-ins" to HTA. Third, HTA asserts that the trial court erred in failing to award punitive damages to HTA from each defendant. Finally, HTA contends that the trial court erred in failing to award to HTA attorney's fees against Unionamerica. We address these issues in the above order.

1

In its Findings of Fact, the trial court found that the defendant, PCR, "fully performed the obligations required of a selling broker under the fee splitting agree-

ment . . . ." and therefore, PCR was entitled to 60% of the commission. It is HTA's contention that the property was actually sold to the buyer by the owners, Unionamerica, and that PCR did not perform acts sufficient to become the "procuring cause" of the sale. HTA quotes from *Frederick May & Co. v. Dunn,* 13 Utah 2d 40, 368 P.2d 266 (1962), which discusses the factors involved in "procuring cause." This Court said:

> However, the extent to which the broker's efforts must induce the sale depends on the terms used in the contract and the understanding and intention of the parties in making such agreement *and the facts and circumstances of the case.*

*Id.* at 43, 368 P.2d at 269 (emphasis added). HTA places great emphasis on the necessity for the initial contact with the buyer, but it is clear from *Frederick May & Co. v. Dunn,* and other cases cited by PCR, that no single act will constitute procuring cause under all circumstances. In this case, the trial court heard the evidence regarding PCR's functions as a broker and found that PCR performed all the obligations of a selling broker. It is well established that this Court will presume findings of fact to be correct and will not overturn them so long as they are supported by substantial evidence in the record. *See, e.g., Piacitelli v. Southern Utah State College,* Utah, 636 P.2d 1063 (1981). The Court must view the evidence and all inferences that might reasonably be made from the evidence in a light most favorable to the judgment entered. *See Id.; Nielsen v. Chin-Hsien Wang,* Utah, 613 P.2d 512 (1980). The trial court heard ample evidence to support its finding: the record shows that PCR traveled to California, negotiated and drafted an earnest money agreement, assisted in the negotiation of the real estate agreement, and for many months thereafter expended considerable effort to bring the sale to a close. On the basis of this evidence, the findings of the trial court that PCR was entitled to a selling broker's portion of the commission must be affirmed.

HTA also contends that, even if PCR earned the seller's commission, PCR is barred from asserting its claim because of its lack of capacity. On the last day of trial, HTA introduced, as evidence of PCR's lack of capacity, a certificate from the Secretary of State which indicated that a search had been made and no record existed that PCR had ever filed to use the name Skyline Realty. This certificate was dated January 4, 1980, 26 days before it was introduced at trial. For 26 days, HTA knew of this document but failed to make use of it or give notice of the problem regarding capacity to opposing counsel. HTA claimed that local Rule 10 of the Third District Court prevented the giving of notice. Rule 10 specifies that discovery proceedings, the filing of documents with the court, and all pretrial motions must be completed 30 days before commencement of trial. However, the rule also states that the right to conduct discovery within the 30-day period is at the discretion of the court and that nothing in the rule "shall preclude or limit voluntary exchange of information or discovery . . . ." Thus, Rule 10 has no application here. Furthermore, Rule 15(a) of the Utah Rules of Civil Procedure provides that a party may amend his pleading by leave of the court or consent of the adverse party and that such leave "shall be freely given when justice so requires." There is nothing in the record which suggests that HTA made any attempt to amend its pleading to conform with Rule 9(a)(1) of the Utah Rules of Civil Procedure, which requires that the defense of lack of capacity be raised by specific negative averment. When HTA obtained the Secretary of State's certificate, there were 10 days remaining before commencement of trial, ample time for PCR to respond to such an amendment. In view of the circumstances and the provisions of the rules discussed, it is clear that HTA had the opportunity to give notice of its defense of lack of capacity. HTA chose not to do so. Thus, we hold that the trial court was correct in ruling that HTA waived this defense.

It should be noted that notice and the resulting opportunity to respond are the critical factors in requiring compliance with Rule 9(a)(1). If the party against whom the defense is asserted has notice and an opportunity to respond, the issue need not be raised specifically in the pleadings. *See Prudential Federal Savings & Loan Association v. Hartford Accident and Indemnity Co.,* 7 Utah 2d 366, 325 P.2d 899 (1958). It must be emphasized, however, that the notice must be definite and clear. The responding party need not guess what hidden defenses may be raised. HTA asserts that because "illegality" was plead as an affirmative defense and because subject matter jurisdiction may be contested at any time, HTA's defense of lack of capacity was preserved. Pleadings of illegality and lack of subject matter jurisdiction do not put a party on notice to respond to a defense of lack of capacity. Were we to rule otherwise, Rule 9(a)(1) of the Utah Rules of Civil Procedure would become a nullity.

HTA also argues on appeal that HTA should receive compensatory damages from PCR in the amount of the 60% portion of the commission because of PCR's alleged breach of fiduciary or good faith duty in failing to disclose the referral from Unionamerica. This question will be discussed below in conjunction with the existence of a fiduciary relationship between HTA and Unionamerica.

2

The major issue in this appeal, as well as at trial, is whether a fiduciary relationship existed between HTA and Unionamerica. In Utah, as elsewhere, a real estate broker is held to be the agent of the property owner for whom he acts. As an agent, he owes a fiduciary duty to his principal. *See, e.g., Hopkins v. Wardley Corp.,* Utah, 611 P.2d 1204 (1980). However, it is generally recognized that no reciprocal duty runs from the principal to the broker. The principal's duty to his broker is one of good faith in the execution of the brokerage contract which established the relationship. We find no Utah law which would raise this good faith duty to the higher standard imposed on those with fiduciary responsibilities.

A fiduciary or confidential relationship may be created by contract or by circumstances where equity will imply a higher duty in a relationship because the trusting party has been induced to relax the care and vigilance he would ordinarily exercise. In such a case, the evidence must demonstrate the placement of trust and reliance such that the nature of the relationship is clear. *See, e.g., Arnoult v. Griffin,* Tenn.App., 490 S.W.2d 701 (1972). In the instant case, the relationship between HTA and Unionamerica was created by the Settlement and Listing Agreements. The record reveals no basis for implying a relationship of special reliance and trust. To the contrary, the record reveals that these parties found it necessary to enter into the Settlement Agreement because of a previous suit brought by Taylor alleging breach of contract and tortious conduct. Adversarial postures in a lawsuit do not suggest confidence or trust. We find that Unionamerica owed no fiduciary duty to its broker, HTA, based on the circumstances of their relationship. Neither do we find that the language of the Settlement Agreement or Listing Agreement created any extraordinary duty to HTA beyond the ordinary duty of good faith in the performance of contracts.

HTA also alleges error in the pretrial order which found no implied provision in either of the parties' agreements requiring Unionamerica to refer all "walk-in" buyers to HTA. When a question arises regarding a written document, the first source of inquiry must be the document itself, considered in its entirety. *See Larrabee v. Royal Dairy Products Co.,* Utah, 614 P.2d 160 (1980). Neither of the agreements contain any express mention of "walk-ins". It is a long-standing rule in Utah that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts to relieve either party from the effects of a bad bargain. *See, e.g., Biesinger v. Behunin,* Utah, 584 P.2d 801 (1978). This Court will not rewrite a contract to supply terms which the parties omitted. *See Tomino v. Greater Park City Co.,* Utah, 570 P.2d 698 (1977). HTA and

Unionamerica were experienced in their business and had every reason to protect themselves in entering into the settlement of a lawsuit. The Settlement Agreement clearly does not make HTA the sole and exclusive agent for Unionamerica, because it contemplates the split of commissions between listing and selling brokers. We find no implied provision regarding the referral of "walk-in" buyers. "[I]t is not for a court to rewrite a contract improvidently entered into at arm's length or to change the bargain indirectly on the basis of supposed equitable principles." *Dalton v. Jerico Construction Co.,* Utah, 642 P.2d 748, 750 (1982) (citations omitted). The order and findings of the trial court in this regard are affirmed.

At trial, HTA contended that the Settlement and Listing Agreements were orally modified by discussion at the time the Settlement Agreement was signed. Conflicting testimony was heard by the court. Where the evidence is in conflict, we defer to the trial court's first-hand assessment of the witnesses' credibility and assume that the trial court believed those aspects of the evidence which support its findings. *See, e.g., Fillmore City v. Reeve,* Utah, 571 P.2d 1316 (1977). The trial court found no oral modification requiring Unionamerica to refer "walk-in" buyers to HTA. Such a finding of fact will not be disturbed by this Court where there is supporting evidence in the record. *See Piacitelli v. Southern Utah State College, supra.* The finding is therefore affirmed.

In summary, we hold that Unionamerica had no fiduciary duty to protect HTA by referring all inquiries to HTA exclusively. Further, we have found no express or implied requirement to do so in the parties' written agreements and no oral modification to that effect. Because there was no duty, there was no breach. Therefore, we affirm the trial court's refusal to award HTA compensatory damages from Stevenson and Unionamerica in the amount of the commission awarded to PCR.

If Unionamerica had no duty to refer all "walk-in" inquiries to HTA, then regardless of the characterization given to the relationship between HTA and PCR, PCR cannot have breached any duty by its failure to inform HTA that the buyer had been referred from Unionamerica. Therefore, we also affirm the trial court's refusal to award to HTA compensatory damages from PCR.

### 3

The appellant, HTA, claims error in the trial court's refusal to award punitive damages. HTA acknowledges the general rule that punitive or exemplary damages are generally not recoverable in contract actions. However, HTA cites our opinion in *Nash v. Craigco, Inc.,* Utah, 585 P.2d 775, 778 (1978), for the proposition that "the nature and type of the wrongful conduct" should determine whether punitive damages should be awarded. In applying this statement to the instant case in support of an award of punitive damages, HTA reads *Nash* too broadly. In *Nash,* the plaintiff prayed for and received an equitable remedy but was denied punitive damages by the trial court. Our opinion discussed the availability of punitive damages in an equitable action and the relationship between the amount of punitive damages awarded and the amount of compensatory damages. That discussion is inapposite here. It is true that in some jurisdictions punitive damages may be awarded in cases involving contracts where the breaching party's conduct is characterized by extreme bad faith, malice or recklessness. *See, e.g., Yacht Club Sales & Service, Inc. v. First National Bank of North Idaho,* 101 Idaho 852, 623 P.2d 464 (1980); *State Farm General Insurance Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974). We prefer the standard articulated by the Kansas Supreme Court in *Gonzalez v. Allstate Insurance Co.,* 217 Kan. 262, 535 P.2d 919 (1975), which states that breach of contract, standing alone, does not call for punitive damages even if intentional and unjustified, but such damages are allowable if there is some independent tort indicating malice, fraud or wanton disregard for the rights of others. *See also Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972); *Temmen v. Kent-Brown Chevrolet Co.,* 227 Kan. 45, 605 P.2d 95 (1980); *Jackson v. Glasgow,* Okl.App., 622 P.2d 1088 (1980).

In the instant case, HTA alleged breach of fiduciary duty, breach of the duty to act in good faith, constructive fraud, conspiracy, conversion and intentional infliction of mental distress. We have already found that neither Unionamerica nor PCR breached a duty which would warrant the award of compensatory damages. The trial court found that there was no factual basis to support the allegations of other tortious conduct. Our review of the record leads us to the same conclusion and thus we affirm the trial court's finding. Therefore, having found no independent tort, we see no basis for the award of punitive damages in this contract case and affirm the denial of punitive damages by the trial court.

### 4

Finally, HTA alleges error in the trial court's failure to award attorney's fees for the recovery of its 40% portion of the commission, and error in the trial court's finding that Unionamerica acted reasonably in depositing the entire commission in escrow. However, the propriety of the escrow deposit was not addressed as an issue at trial, nor is it raised as an issue on this appeal. In fact, Unionamerica sought pretrial relief in the nature of interpleader, and although its motion therefor was denied, the district court sanctioned the prior deposit of the commission funds in escrow, and further ordered the funds to be maintained in an interest bearing account. No appeal was taken from that order. Furthermore, a review of the trial transcript reveals that HTA did not address the issue of attorney's fees at trial, beyond reference to it in counsel's opening statement. It rested its case without presenting or proffering evidence on the issue, and it neither sought nor obtained leave of court to reopen its case at a later time for that pur-

pose. In accord with the well-established rule of law that requires an award of attorney's fees to be supported by evidence, the trial court did not commit error in declining to make an award.

The actions of the trial court are therefore affirmed. No costs awarded.

HALL, C.J., and STEWART, OAKS and HOWE, JJ., concur.