John O. HOWE, Trustee; Robert E. Howe and Bonnie F. Howe, husband and wife; William K. Evans and Carole H. Evans, husband and wife, as Trustee; and Judith H. Steenblik, Plaintiffs, Appellees, and Cross–Appellants,

v.

PROFESSIONAL MANIVEST, INC., a Utah corporation; Manivest Corporation, a Utah corporation, Defendants, Appellants and Cross–Appellees.

No. 910598–CA.

Court of Appeals of Utah.

April 3, 1992.

Ronald E. Nehring, Salt Lake City, for appellants.

Michael R. Carlston, Max D. Wheeler, Salt Lake City, and Gerrit M. Steenblik, Phoenix, for appellees.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

Professional Manivest, Inc. (Manivest) appeals from a judgment by the trial court arising out of breach of lease. The trial court awarded damages, attorney fees, costs and expenses. We affirm.

## FACTS

On October 15, 1960, J.E. Lehnherr, Herman L. Franks, and Stanford L. Hale (as partners doing business as Valley Shopping Center) leased land in Salt Lake County from Earl E. Howe, John O. Howe, Vivian Howe, and Maxine W. Howe (the Howes)[1] under the terms of a fifty-year ground lease. The lessees had a fifteen-year option to purchase the property under the lease. The lessees were also prohibited from making any assignments except to a corporation that would be organized to build the shopping center. The partners of

Valley Shopping Center assigned the lease to Southlake Shopping Center, Inc., Manivest's predecessor-in-interest. When the option to purchase expired in October 1975, only certain portions of the leased property had been bought, leaving other parts subject to the lease without a purchase option.

In December 1987, Manivest sought a $4 million loan from Valley Bank & Trust Company (Valley Bank), and assigned the ground lease as well as the rents from all tenant subleases to Valley Bank as security. Manivest also executed and recorded a deed of trust in favor of Valley Bank. After the trust deed had been executed, delivered, and recorded, Manivest sought the consent of the Howes to the assignment by sending them an "acknowledgement." The Howes refused to consent to the assignment, specifically objecting to language of the acknowledgement that would have subordinated their interest to Valley Bank.

> The undersigned acknowledges that the Lessee is encumbering their interest in the property and said loan is hereby approved as required by said lease.

The Howes thereupon demanded that Manivest remove the trust deed, and served Manivest a notice of default by a letter dated March 30, 1988. As grounds for default, the letter cited that Manivest was in breach of

1. The covenant to keep the premises free and clear of all liens and encumbrances[2];

2. The covenant not to assign the Lease without [the lessor's] prior written consent; and

3. The covenant to maintain the premises and to keep them free from weeds and other obnoxious growth.

Manivest failed to cure the conditions complained of, and the Howes sent Mani-

---

1. The trial court found that co-plaintiffs John O. Howe; Robert E. Howe and Bonnie F. Howe; William K. Evans and Carole H. Evans; and Judith H. Steenblik are successors-in-interest to the original lessors.

2. The Howes also discovered that Manivest had earlier recorded trust deeds on the property in 1978 and 1982 to secure other loans. The Howes also learned that Manivest had quit-claimed real property to Wallaby Enterprises in

1983. Although the loans were paid and the trust deeds released when the obligations were satisfied, none of the transactions had been entered into with the Howes' knowledge or consent. Inasmuch as the acts complained of in the Howes' March 1988 default letter support a claim for breach of contract, we do not address the legal effect, if any, of the earlier transactions.

vest a second notice of default on April 29, 1988. When the conditions remained unchanged, the Howes served Manivest a notice of termination on May 31, 1988, demanding that Manivest surrender the property. Manivest refused to vacate the premises. Before receiving the termination notice, Manivest had assigned its interest in the lease to a trust, again unbeknownst to the Howes, to liquidate all assets, including the Southlake Shopping Center for the benefit of creditors on April 28, 1988.

In September 1988, Manivest apparently removed some, but not all of the encumbrances. The Howes thereupon filed a complaint against Manivest in November 1988 on the ground that the assignments and encumbrances violated the lease. The Howes also complained that Manivest's failure to maintain the property constituted an additional lease violation. Manivest counterclaimed that the Howes had no valid reason for withholding their consent to the assignment and, therefore, acted in bad faith. While the case was still pending, Murray City notified Manivest on July 10, 1989, that weeds growing on the property violated a city ordinance.

The trial court found that Manivest had executed, delivered, and recorded a trust deed on the leased property and made an assignment of the lease in favor of Valley Bank. The trial court also found that weed growth and other lease violations were substantial, and when taken together with the assignments and encumbrances, constituted a material breach of the lease. The trial court dismissed Manivest's counterclaim, and ruled that Manivest had "forfeited" its interest in the leasehold estate to the Howes. The trial court then ordered possession, and entered judgment in favor of the Howes in the amount of $24,489.50 as "liquidated" damages for Manivest's continued use of the property, $16,231.05 in related costs and expenses, and $131,867.55 in attorney fees.

## LEASE

### A. Standard of Review

Interpretation of an "unambiguous, integrated contract is a question of law, which is reviewed on appeal for correctness." *Crowther v. Carter*, 767 P.2d 129, 131 (Utah App.1989). A cardinal rule in construing a contract is to give effect to the intentions of the parties and, if possible, to glean those intentions "from an examination of the text of the contract itself." *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988). "It is a longstanding rule in Utah that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts to relieve either party from the effects of a bad bargain." *Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982).

### B. Covenant Against Encumbrances

■ Manivest contends that the Valley Bank trust deed did not encumber the Howes' reversionary fee interest because Manivest could not have pledged more than its own leasehold estate to Valley Bank. Manivest argues that the trial court erred in determining that the Valley Bank trust deed was a breach of the covenant against encumbrances. The lease required the lessee, however, "to keep the demised premises free and clear of all liens and encumbrances of any nature whatsoever." The lease prohibition against *all encumbrances of any nature* encompasses each and every encumbrance. Manivest breached the lease by recording the trust deed, therefore, because the trust deed not only encumbered Manivest's leasehold interest in the demised premises, but also purported to encumber the Howes' fee interest. Accordingly, we reject the argument that legal impossibility is a defense to breach of a lease covenant against encumbrances.

The Utah Supreme Court reached a similar conclusion in *Brewer v. Peatross*, 595 P.2d 866 (Utah 1979). In *Brewer*, the grantors of a warranty deed argued that a lien in favor of an improvement district did not legally encumber real property because the lien did not attach until after an ordinance levying assessment for the improvements came into effect. *Id.* at 868. De-

spite the argument that the property was not legally encumbered, the court held the grantors liable for breach of the covenant against encumbrances. The court reasoned that the property was encumbered because the existence of the improvements was either known to the grantors or was discoverable from the record by the lien filed. *Id.* Whether the lien was legally enforceable was thus immaterial to the court's analysis of whether the lien encumbered the property in *Brewer.* Likewise, whether the Valley Bank trust deed is legally enforceable is immaterial to whether Manivest breached the covenant against encumbrances.

In *Brewer,* the Utah Supreme Court defined an "encumbrance" as "any right that a third person holds in land which constitutes a burden or limitation upon the rights of the fee title holder." *Id.* The Valley Bank trust deed burdened the Howes' fee interest until it was removed from the record because it purported to limit their rights. Manivest breached the lease covenant against encumbrances, therefore, by recording the trust deed regardless of its legal effect.

### C. Covenant Against Assignment

■ Manivest contends that its assignment of the lease to Valley Bank was not a breach of the covenant against assignment. Manivest argues that a valid assignment could not have been legally effected without the Howes' consent inasmuch as the lease was, by its terms, unassignable. The lease prohibition against assignment is as follows:

4. Lessees shall have the right to assign this Lease and Option to purchase to a corporation to be formed for the purpose of carrying out the terms of this Agreement. Such assignment shall not release the Lessee of any liabilities hereunder. *Except as to the assignment permitted pursuant to this paragraph, this Lease shall be unassignable except with the prior consent of the Lessors.* Provided, however, that the Lessees or their assignee as herein provided shall have the right to enter into subleases of portions of the demised premises, provided, however, that said subleases shall not attach to or become binding in any way upon the fee interest of the Lessors; that said Lessees shall be limited to that class of business commonly known as "retail trade and service."

(Emphasis added.)

The Howes agreed to assignment of the lease to a corporation that would build the shopping center. Beyond the initial assignment agreed to in the lease, however, the parties agreed that the Howes' consent to any other future assignments would be required as a prior condition of assignment. Because it is the mere act of assignment that constitutes a breach of the lease, and not the legal effect of an assignment, we reject the argument that the prohibition against assignment was limited to only those assignments carrying some legal effect. Like other provisions of the lease, the lease term against assignment is enforceable.

■ Manivest also argues, in the alternative, that the Howes acted in bad faith by arbitrarily withholding their consent to the assignment. In *Zion's Properties, Inc. v. Holt,* 538 P.2d 1319, 1321 (Utah 1975), the Utah Supreme Court recognized that "there is implied in any contract a covenant of good faith and cooperation, which should prevent either party from impeding the other's performance of his obligations thereunder; and that one party may not render it difficult or impossible for the other to continue performance and then take advantage of the non-performance he has caused." However, there is no violation of the duty of good faith, as a matter of law, when a party is simply exercising its contractual rights. *Heiner v. S.J. Groves & Sons Co.,* 790 P.2d 107, 115 (Utah App. 1990).

The Howes were not obligated to consent to every proposed assignment. Manivest's argument that the Howes could not arbitrarily withhold their consent to an assignment of the lease confuses the duty to seek their prior permission with compelled condonation. Manivest assigned the lease to Valley Bank without first seeking or ob-

taining the Howes' consent. The nonconsensual assignment was not permitted by the lease. Manivest breached the covenant against assignment, therefore, regardless of the legal effect of an actual or purported transfer.

### D. Duty to Maintain

■ Manivest argues that the lease imposed a duty to keep the premises only "reasonably" free from weeds. The lease, however, was silent as to the standard of maintenance to be applied:

> 5. *Lessee agrees to* be responsible for the entire demised premises, and during the term of the lease to maintain the same and *keep it free from weeds and other obnoxious growth;* that it will not allow any of its lessees to conduct any business or perform any act in violation of the ordinances orregulations [sic] of Murrary [sic] City, the laws of the State of Utah or the United States Government.

(Emphasis added.)

Manivest was cited by Murray City for growing weeds on the property. Because the condition was a violation of Murray City ordinance and Manivest allowed the condition to exist, Manivest was in breach of the lease for failure to maintain the premises free from weeds or obnoxious growth. If the parties intended that maintenance would be governed by a reasonableness standard, they should have included it in the contract. However, "[w]e will not rewrite a contract to alleviate a contracting party's mistake, but will construe it according to its terms as written." *Hoth v. White*, 799 P.2d 213, 217 (Utah App. 1990).

### E. Remedy for Breach

■ The lease imposed a sixty-day cure period for breach of any of the lease covenants, and further provided that the lease would terminate automatically without notice if breach was not cured.

> 9. Should Lessees fail to pay the rent herein reserved or make any of the other payments or charges to be paid by them hereunder or fail to keep any covenant herein contained to be performed by Lessee, or *within sixty (60) days thereafter, then in that event, without notice from the Lessors, this Agreement shall cease and terminate, and the Lessees shall surrender said premises* to the Lessor.

(Emphasis added.)

Manivest was notified of the breach of three lease covenants, and had sixty days to cure the conditions complained of. Manivest took no action to cure the defaults within that time. The trial court, therefore, correctly determined that the lease terminated as a result of Manivest's breach.

As long as the lease remained "in full force and effect," the parties agreed that "[a]ll improvements placed upon said demised premises shall remain the property of the Lessees." The Howes, therefore, succeeded to the improvements on the property upon termination. We have reviewed the remaining arguments raised on appeal concerning the appropriateness of forfeiture. Because the option to purchase had expired and the parties agreed that the Howes would succeed to the improvements upon termination, we deem them to be without merit. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (appellate court not required to analyze and address in writing each and every argument, issue, or claim raised on appeal).

### ATTORNEY FEES AND COSTS

■ The trial court entered judgment in favor of the Howes on May 18, 1990, and awarded them fees, expenses and costs. The trial court further directed that the amount of attorney fees and costs "would be established by a supplemental judgment." The Howes applied for fees, expenses and costs approximately five weeks later. The trial court supplemented the earlier judgment with specific amounts as to costs, expenses, and fees. On appeal, Manivest challenges the award of attorney fees, expenses and costs on the ground that the Howes did not make timely application for them under Rule 54(d)(2) of the Utah Rules of Civil Procedure.

Attorney fees may be awarded in Utah "only if authorized by statute or contract." *Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988). The Howes were contractually entitled to an award of a reasonable attorney fee under the lease executed in 1960 as follows

20. The Lessors and Lessees each agree that should they default in any of the covenants or agreements contained herein, *the defaulting party shall pay all costs and expenses, including a reasonable attorney's fee, which may arise or accrue from enforcing this Agreement, or in obtaining possession of the premises covered hereby, or in pursuing any remedy provided hereunder or by the statutes of the State of Utah* whether such remedy is pursued by filing a suit or otherwise.

(Emphasis added.)

Under the express terms of the contract, the Howes are entitled to a reasonable attorney fee, costs and expenses incurred at trial and on appeal. *See G.G.A., Inc. v. Leventis,* 773 P.2d 841, 846 (Utah App.1989). Costs are also an appropriate expense of litigation. Because the time limitation of Rule 54(d)(2) does not apply to expenses or attorney fees, the rule does not bar the award. The trial court's calculations were supported by evidence in the record. *See Dixie State Bank,* 764 P.2d at 988–89. Accordingly, we affirm the award of attorney fees, costs, and expenses.

## CONCLUSION

Manivest breached the lease covenant to maintain the premises as well as the covenants against assignment, and encumbrances. The lease was terminated by Manivest's separate breach of three lease covenants. The Howes were thereby entitled to possession of the premises and an award of attorney fees, expenses and related costs.

GREENWOOD, J., concurs.

ORME, J., dissents.