744 So.2d 499 (1999)
David D. EASTMAN, et al., Appellants,
v.
FLOR-OHIO, LTD., etc., Appellee.
No. 98-920.
District Court of Appeal of Florida, Fifth District.
September 17, 1999.
Clarification Denied October 28, 1999.
*500 Sharon Lee Stedman of Sharon Lee Stedman, P.A., Orlando, and James W. Smith of Smith, Schoder & Roddenberry, P.A., Daytona Beach, for Appellants.
Arnold R. Ginsberg of Ginsberg & Schwartz and Nance, Cacciatore, et al., Miami, for Appellee.

ON MOTION FOR REHEARING
ANTOON, C.J.
Upon review of appellant's motion for rehearing of the July 2, 1999 opinion of this court, we withdraw the same and issue the following corrected opinion. In all other respects, the motion for rehearing is denied.
In this negligence action, a jury found Attorney David D. Eastman and his firm, Parker, Skelding, Labasky & Corry, P.A. (the law firm), liable to Flor-Ohio, Ltd. (the park owner) for legal malpractice. The law firm appeals the final judgment arguing the trial court erred in 1) denying its motion for summary judgment based on the theory that the park owner had abandoned its cause of action for legal malpractice by voluntarily dismissing its appeal in an earlier related case, 2) not admitting into evidence a settlement agreement, and 3) denying its motion for a new trial. We affirm.
The park owner owns and operates a mobile home community known as The Lakes of Melbourne. Residents of the community own their mobile homes but pay the park owner rent for the lots upon which the homes are located. In 1988, the park owner hired the law firm to effectuate rental rate increases on its lots. The law firm assigned the project to one of its associates, Attorney Eastman, who prepared rate increase notices effective May 1, 1989. Attorney Eastman sent the notices to the park owner's resident manager for distribution. Again in 1990, 1991, and 1992, Attorney Eastman prepared rate increase notices for the park owner and sent the notices to the park owner's resident manager for distribution.
In October 1989, the board of directors of The Lakes of Melbourne Homeowners' *501 Association (homeowners' association) complained to the park owner's resident manager that the board had not received notice of the May 1, 1989 rent increase. Thereafter, individual home owners filed a class action lawsuit against the park owner seeking reimbursement for the increased rent which had been paid. The complaint alleged that, although the resident manager mailed the notices to the home owners, the manager did not send a notice to the board of directors of the homeowners' association as required by Florida law.[1]
Upon motion filed by the home owners, the trial court entered summary judgment against the park owner, finding that the park owner had failed to comply with the notice requirement of section 723.037(1). The court ruled that the "notice of increase in lot rental amount was unlawful and invalid." The park owner timely appealed the summary judgment order and retained new counsel.
After the appeal was filed, the park owner entered into a settlement with the home owners. Upon execution of a settlement agreement, the park owner voluntarily dismissed its pending appeal.
The park owner thereafter filed this negligence action against the law firm alleging legal malpractice in relation to the home owners' class action suit. The complaint alleged that the law firm was negligent in failing to prepare the notice of rental increases in compliance with the requirements set forth in section 723.037(1), Florida Statutes, and that the law firm's negligence caused the park owner damage including lost rents, past and future, to which it would have otherwise been entitled.
The law firm filed a pretrial motion for summary judgment arguing that, as a matter of law, judgment should be entered in its favor because the park owner could not establish its claim of legal malpractice because its appeal in the underlying class action suit had been voluntarily dismissed. More specifically, the law firm argued that the park owner had abandoned its legal malpractice claim by voluntarily dismissing its appeal. After considering argument of counsel, the trial court denied the motion on appeal; the law firm challenges that ruling.
The issue of whether a party's voluntary dismissal of an appeal involving a related case constitutes an abandonment of that party's subsequent action for legal malpractice based upon allegations of negligence occurring in the related case was considered by the third district in Pennsylvania Insurance Guaranty Association v. Sikes, 590 So.2d 1051 (Fla. 3d DCA 1991). In Sikes, an insurance company sued its trial counsel for legal malpractice alleging that counsel had been negligent in defending the company in a related personal injury lawsuit. In the personal injury lawsuit, the trial court had determined that the insurance company's pleadings were inadequate and the court denied the company's motion to amend its pleadings. The matter proceeded to trial and a verdict was later returned against the insurance company. Of particular importance to our discussion is the fact that, after the adverse judgment was entered against the insurance company, the company immediately retained new counsel and appealed the final judgment. The claims of error raised in the appeal related to whether the trial court erred in ruling on the adequacy of the insurance company's pleadings. However, before the appeal was perfected, the insurance company settled the underlying personal injury lawsuit and voluntarily dismissed the pending appeal.
Thereafter, the insurance company sued its trial counsel for malpractice, alleging that the attorney had negligently prepared the pleadings in the personal injury lawsuit. To support this claim, the insurance *502 company relied upon the trial court's ruling that the pleadings were inadequate. Trial counsel moved for summary judgment alleging that the insurance company could not prevail on its claim for legal malpractice because, by voluntarily dismissing its appeal in the personal injury lawsuit, the company had deprived the appellate court of the opportunity to decide whether the trial court had erred in ruling on the adequacy of the pleadings drafted by counsel. The trial court agreed and entered summary judgment in favor of trial counsel. Upon review, the third district affirmed the summary judgment, holding "on the facts of this case ... the [insurance company's] settlement of the underlying personal injury case, while the appeal was pending, constituted an abandonment of any claim that [the insurance company's] loss resulted from legal malpractice rather than judicial error." Id. at 1053. Importantly, the third district noted that "in all likelihood, there would have been a reversal of the judgment" entered in the personal injury case because the trial court had erred in finding that the defensive pleadings were inadequate. Id. at 1053. The court then explained its theory of abandonment by noting that the error which lead to the entry of judgment against the insurance company in the personal injury suit "was judicial error rather than legal malpractice." Id. at 1052. Notably, the third district cautiously based its ruling "on the facts of this case," thereby emphasizing that this theory of abandonment must be narrowly applied on a case by case basis.
A close reading of the Sikes opinion reveals that the third district recognized that the vital element presented by the facts in that case was that the alleged error upon which the insurance company's entire claim of legal malpractice was based (i.e., the trial court's finding that defensive pleadings filed by trial counsel were inadequate) turned out to be an error made by the trial court which would have been corrected had the appeal not been dismissed. This fact was vital to the success of trial counsel's abandonment theory because it was clear to the third district that, had the insurance company prosecuted its appeal in the personal injury lawsuit, reversal of the judgment entered against the insurance company would have been required because the trial court had erred in ruling that the insurance company's pleadings were inadequate. In so ruling, the third district specifically concluded that the insurance company's trial counsel had not been negligent in drafting the pleadings. We agree with the third district that this concept of abandonment can be applied only in limited circumstances where facts similar to those which existed in Sikes are presented. See also Segall v. Segall, 632 So.2d 76 (Fla. 3d DCA 1993)(affirming the court's refusal to establish a bright line rule requiring complete appellate review as a condition precedent for pursuit of a subsequent legal malpractice action, and admonishing that not every legal malpractice plaintiff is required to prosecute an appeal of the underlying action to conclusion before asserting a claim for legal malpractice.)
Other courts have recognized and discussed the limited application of this abandonment theory. See Coble v. Aronson, 647 So.2d 968 (Fla. 4th DCA 1994), rev. denied sub nom. Fine, Jacobson, Schwartz, Nash, Block & England, P.A. v. Coble, 659 So.2d 1086 (Fla.1995); see also Roger Zitrin, M.D., P.A. v. Glaser, 621 So.2d 748 (Fla. 4th DCA 1993). In Lenahan v. Russell L. Forkey, P.A., 702 So.2d 610, 611 (Fla. 4th DCA 1997), the fourth district joined the third district in declining to articulate a bright line test for application of the abandonment rule, pointing out that only in "very narrow" circumstances should it be applied as a matter of law. See also Parker v. Graham & James, 715 So.2d 1047 (Fla. 3d DCA 1998).
Applying this case law to the instant facts, we note first that the law firm invites this court to depart from the historically narrow application of the abandonment *503 theory and adopt a bright line rule that, as a condition precedent to the filing of an action for legal malpractice based upon allegedly negligent trial representation, the plaintiff must establish that he filed and unsuccessfully prosecuted an appeal involving the adverse judgment entered in the related litigation. In making this argument the law firm relies in part on language set forth by the supreme court in Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990).
The Peat, Marwick opinion focused on the question of when causes of action for professional malpractice arise for purposes of determining when the statute of limitations commences to run. The specific issue before the court was "whether the commencement of the limitations period in an accounting malpractice action relating to income tax preparation occur[red] with the receipt of a `Ninety-Day Letter' or with the conclusion of the appeals process, under circumstances where the accountant disagree[d] with the IRS's determination." Id. at 1325. In deciding that the statute of limitations commenced to run only upon the stipulated order issued by the tax court because that is when redressable harm occurred, the Florida supreme court relied on decisions issued by the district courts involving legal malpractice.[2] These cases held that a cause of action for legal malpractice does not accrue until the underlying legal proceeding has been concluded on appeal. See Peat, Marwick at 1325 (citing Zakak v. Broida & Napier, P.A., 545 So.2d 380 (Fla. 2d DCA 1989). In so ruling, the courts reasoned that, until conclusion of the appeal, it cannot be determined whether there was "actionable error by the attorney." Id. It is upon this quoted language that the law firm relies. Such reliance is misplaced.
Neither the Peat, Marwick opinion, nor the cases cited therein, addressed the issue of whether the filing and prosecution of an appeal in a related case is a condition precedent to the subsequent filing of a legal malpractice claim based upon negligent conduct allegedly occurring in that case. As aptly observed by then Judge Pariente, "[t]he principle of Peat, Marwick does not mean that in every case involving attorney malpractice, the dismissal or settlement of a related case, or the failure to take an appeal of the underlying lawsuit, will automatically translate into an inability to establish redressable harm." Lenahan, 702 So.2d at 611.[3] Accordingly, we reject the law firm's invitation to liberally expand the abandonment theory and issue such a bright line rule, deciding instead to heed the sound reasoning set forth in Sikes and Lenahan that only under narrow circumstances should a cause of action for legal malpractice be deemed abandoned based upon the voluntary dismissal of the appeal taken from a related adverse judgment.
We next must discuss whether the instant case possesses factual circumstances similar to those presented in Sikes. As noted above, the underlying class action lawsuit which precipitated the instant action for legal malpractice centered on the home owners' claim of improper notice of *504 rent increases. We know from the only case law in existence at the time the class action suit was tried that the notice requirements contained in section 723.037(1), Florida Statutes, were to be strictly construed. See Menna v. Sun Country Homeowners Association, Inc., 604 So.2d 897 (Fla. 2d DCA 1992). Thus, separate notice to the members of the board of directors of the homeowners' association was, as the trial court ruled, statutorily required. As a result, it appears clear that the trial court properly entered summary judgment in favor of the home owners on their claim against the park owner for damages. Therefore, had the park owner refused to settle the related case on appeal, and instead prosecuted its direct appeal of the summary judgment order to judicial conclusion, there is no reason to believe that this court would have reversed the trial court's ruling. Accordingly, the trial court in this case properly concluded that the park owner did not abandon its right to pursue a claim of legal malpractice against the law firm by voluntarily dismissing its appeal from the adverse judgment in the class action suit because that judgment was not likely to be reversed due to a finding of judicial error relating to the alleged claim of legal malpractice.
The law firm's argument is flawed in another respect. Even if we assume arguendo that there had been a likelihood that this court would have reversed the summary judgment order entered in the class action suit, the law firm is not able to show that it was prejudiced by the ruling. This is because in this appeal the law firm failed to raise for our consideration the issue of whether the trial court properly construed section 723.037(1), and whether the statute requires strict compliance. In other words, if the trial court had erred in its ruling that strict compliance with the notice provisions of the statute were required, that alleged error could have been raised and corrected in this appeal had the issue been raised. However, the only argument made on appeal here was that the trial court erred by denying the law firm's motion for summary judgment on the abandonment theory.
Before concluding our discussion of the abandonment theory, we comment on the serious policy reasons which militate against liberalizing the abandonment theory beyond the narrow parameters set forth in Sikes. Perhaps the least compelling reason is the negative effect such a ruling would have on the work load of the appellate courts. If we were to issue a ruling that appeals are required in all cases in order to preserve the client's right to subsequently pursue a claim for legal malpractice, meritiess appeals would be prosecuted by litigants solely for the purpose of preserving their right to later assert a malpractice claim. Of course, such a ruling would also discourage parties from settling pending appeals and would be inconsistent with the party's legal duty to mitigate their damages. See Zinn v. GJPS Lukas, Inc., 695 So.2d 499, 501 (Fla. 5th DCA 1997) (holding that where business suffers from act of negligence, the amount of lost profits recoverable will depend, in part, upon whether the plaintiff discharged their duty to mitigate their damages). A more important reason is that such a ruling would require litigants to spend yet more of their resources prosecuting an appeal to judicial conclusion even though they may disagree with the theory of the appeal they would be required to maintain. For example, here the park owner would have been first required to pursue its appeal arguing that the trial court erred in ruling that the law firm had improperly prepared and delivered the rental increase notices. Thereafter, in its legal malpractice case, the park owner would have been required to argue that the law firm was negligent in preparing and delivering the notices.
The law firm raised two other claims of trial error. First, the law firm contended that the trial court erred in refusing to admit into evidence the settlement agreement between the park owner and the lot owners. The record reflects *505 that the trial court carefully considered the park owner's request that the entire settlement agreement should be admitted into evidence. After reviewing the agreement, the trial court held that it was not admissible because the probative value of the agreement was outweighed by its potential prejudicial effect. See § 90.403, Fla. Stat. (1997). The trial court also specifically found that the relevant provisions of the agreement had already been presented to the jury and that the agreement itself would be merely cumulative. The trial court did not abuse its broad discretion by refusing to admit the settlement agreement into evidence. See Jent v. State, 408 So.2d 1024, 1029 (Fla.1981), modified on other grounds, Preston v. State, 444 So.2d 939 (Fla.1984); see also Dale v. Ford Motor Co., 409 So.2d 232 (Fla. 1st DCA 1982). Second, the law firm contended that the trial court erred in denying its motion for new trial. Our review of the record reveals that the trial court did not abuse its discretion in determining that the verdict was not contrary to the manifest weight of the evidence, and therefore this contention is also without merit. See Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla.1985).
AFFIRMED.
COBB and THOMPSON, JJ., concur.
NOTES
[1] See § 723.037(1), Fla. Stat. (1989) (providing that park owners must provide written notice to each mobile home owner and the board of directors of the homeowners' association prior to any increase in rental amount).
[2] See Haghayegh v. Clark, 520 So.2d 58 (Fla. 3d DCA 1988); Diaz v. Piquette, 496 So.2d 239 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1042 (Fla.1987); Richards Enters., Inc. v. Swofford, 495 So.2d 1210 (Fla. 5th DCA 1986), cause dismissed, 515 So.2d 231 (Fla. 1987); Adams v. Sommers, 475 So.2d 279 (Fla. 5th DCA 1985); Chapman v. Garcia, 463 So.2d 528 (Fla. 3d DCA 1985); Birnholz v. Blake, 399 So.2d 375 (Fla. 3d DCA 1981).
[3] Although the Peat, Marwick court did not directly address the question of whether dismissal of an appeal from the underlying case constitutes an abandonment of a cause of action for legal malpractice, it did so implicitly. The facts in Peat, Marwick were similar to those presented in this case. The court decided that the cause of action for professional negligence arose when the tax court accepted the stipulation from the taxpayers dismissing the appeal from the IRS ruling. Interestingly, nowhere in its opinion does the supreme court mention the question of whether the stipulated dismissal of the appeal constituted an abandonment of the taxpayers' subsequent malpractice action against its accountants.