2007 UT 48

**CRESTWOOD COVE APARTMENTS BUSINESS TRUST dba Cottonwood Creek Apartments and Shangri–La UBO, Plaintiffs and Appellants,**

v.

**Shawn TURNER and Larsen, Kirkham & Turner, Defendants and Appellees.**

No. 20050896.

Supreme Court of Utah.

June 22, 2007.

D. Kendall Perkins, Sandy, for plaintiffs.

Michael F. Skolnick, J. Kevin Murphy, Salt Lake City, for defendants.

PARRISH, Justice:

¶ 1 This appeal arises from a claim that Shawn Turner and his law firm, Larsen, Kirkham & Turner (collectively, "Turner"), committed malpractice when representing Shangri–La, U.B.O., in a redemption lawsuit. Shangri–La and its successor, Crestwood Cove Apartments Business Trust (collectively, "Shangri–La"), allege that Turner committed malpractice by failing to timely contest the application of Utah's unlawful detainer statute [1] and its treble damage provisions [2] and by failing to raise Utah Rule of Civil Procedure 69(j) [3] as the appropriate measure of damages. The district court granted Turner's motion for summary judgment, reasoning that Turner did not commit malpractice and that, in any event, Shangri–La had forfeited its right to pursue Turner for malpractice when it settled the underlying redemption lawsuit before it could be decided on appeal. Shangri–La appeals the district court's decision. We affirm the dismissal entered by the district court on different grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 In March 1995, Shangri–La, the owner of an apartment complex (the "apartments" or the "property"), sued its former apartment managers for fraud. The court dismissed Shangri–La's claim and awarded the former managers court costs and attorney fees in the amount of $4,767. Shangri–La failed to pay the judgment. As a result, the former managers caused the property to be sold at a sheriff's sale to Kasey Enterprises ("Kasey") in August of 1996 for the purpose of satisfying their judgment. Kasey purchased the property, valued at $4,000,000, for a mere $8,000. Kasey subsequently sold it to UAW Properties ("UAW") and DLM Investments ("DLM") for $11,197.

¶ 3 Although Shangri–La made no attempt to redeem the property within the six-month statutory redemption period, it remained in possession and continued to collect and receive rent from its tenants. On April 16, 1997, UAW and DLM served Shangri–La with notice to quit the property. Two days later, Shangri–La filed an action to quiet title to the property, asking the court to invalidate the sheriff's sale or, in the alternative, to extend the time to redeem the property from that sale. UAW and DLM counterclaimed for unlawful detainer and conversion. Several months later, Shangri–La retained Turner to represent it in connection with the lawsuit.

¶ 4 In May 1998, the trial court issued a memorandum decision in which it ruled that the sheriff's sale was valid. Nevertheless, it equitably extended the redemption period after finding that Kasey's purchase of a $4,000,000 property for a mere $8,000 shocked the conscience. The trial court also determined that UAW and DLM were entitled to the return of their purchase price, attorney fees, and taxes paid on the property, as well as $304,333 for rents that Shangri–La had collected after the sheriff's sale.

¶ 5 The trial court asked for supplementary briefing on the issue of whether UAW and DLM were entitled to treble damages for the rents under Utah Code section 78–36–10, the statutory provision specifying damages for unlawful detainer. Turner filed a supplementary brief in which he argued that the treble damages provision of the unlawful detainer statute was not applicable. Nevertheless, the trial court ruled that the treble damages provision applied, trebling the amount in rent due UAW and DLM to $912,999. That amount, plus UAW and

---

1. Utah Code Ann. § 78–36–3 (2002) (amended 2007). The 2007 amendment to the unlawful detainer statute has no bearing on the outcome of this case.

2. *Id.* § 78–36–10 (1996).

3. For purposes of this action, we cite the 1995 version of rule 69. Current provisions governing redemption are found in Utah Rule of Civil Procedure 69C.

DLM's purchase price, attorney fees, and property taxes brought Shangri–La's total redemption price to nearly $1,000,000.

¶ 6 Turner filed a motion for a new trial or an amended judgment in which he again argued that the unlawful detainer statute did not apply to UAW and DLM's claims against Shangri–La. In his reply to UAW and DLM's memorandum in opposition to the motion, Turner also noted that Utah Rule of Civil Procedure 69(j)(3) "governs the amount that must be paid in order to redeem a property" and that Utah Rule of Civil Procedure 69(j)(7) governs "the treatment of rents during the period of redemption." Despite these assertions, the district court denied the motion, indicating that "the arguments made by [Shangri–La] in this case are in substance the same arguments that have previously been made."

¶ 7 In November 1998, Shangri–La hired new legal counsel and appealed the trial court's ruling. By the end of March 2000, the appeal and cross-appeal were fully briefed. During this time, UAW and DLM took possession of the property and allegedly began to mismanage it, resulting in the property's devaluation and a decrease in rental income. In order to stop the diminution of the property value and retake possession, Shangri–La decided to enter into a settlement agreement with UAW and DLM. Under the terms of this settlement agreement, Shangri–La agreed to the dismissal of its appeal with prejudice.

¶ 8 Shangri–La subsequently filed this malpractice action against Turner, contending that Turner had "failed to interpose such legal defenses and theories on behalf of [Shangri–La] as would adequately protect [Shangri–La's] interest in" the apartment complex. Turner moved for summary judgment. The district court granted his motion, reasoning that Turner had not committed malpractice because the judge in the underlying case had Turner's supplemental brief before him when he issued his final decision. The district court also ruled that Shangri–La had "forfeited [its] right to pursue any mal-

practice action against" Turner by settling the underlying action instead of pursuing the appeal.

¶ 9 Shangri–La appeals the district court's grant of summary judgment in favor of Turner. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## STANDARD OF REVIEW

¶ 10 We review the district court's decision to grant summary judgment for correctness, affording the trial court no deference.[4] In reviewing the grant of summary judgment, "we recognize that summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[5]

## ANALYSIS

¶ 11 We begin by reviewing the district court's conclusion that Shangri–La abandoned its malpractice claim against Turner when it settled the redemption lawsuit, thereby preventing the court of appeals from correcting what both parties now concede to be judicial error by the trial judge in that lawsuit. Although we hold that the settlement did not constitute abandonment of Shangri–La's malpractice claim, we nevertheless affirm the summary judgment entered by the district court on alternative grounds. Specifically, we hold that judicial error, rather than Turner's alleged malpractice, proximately caused Shangri–La's injury.

## I. SHANGRI–LA DID NOT ABANDON ITS CLAIM THROUGH SETTLEMENT

¶ 12 Shangri–La challenges the district court's holding that it abandoned its malpractice action against Turner when it settled the underlying redemption lawsuit (the "abandonment doctrine"). Shangri–La's challenge to the abandonment doctrine presents an issue of first impression in Utah. We accordingly begin by considering the cases from other jurisdictions on which the district

4. *Swan Creek Vill. Homeowners Ass'n v. Warne,* 2006 UT 22, ¶ 16, 134 P.3d 1122.

5. *Id.*

court relied.[6] We conclude that these cases cannot be read to support as broad an application of the abandonment doctrine as the district court suggested and, in fact, were effectively decided on causation principles. We therefore decline to adopt the abandonment doctrine.

### A. The Abandonment Doctrine

¶ 13 Broadly stated, the abandonment doctrine provides that a client forfeits any legal malpractice claims arising from an attorney's alleged mishandling of litigation when the client settles the underlying litigation before final judicial review "[i]f the compromise prevented the judicial resolution of issues that would have established that the attorney was not negligent or a cause of the client's loss."[7]

¶ 14 The Florida Court of Appeals articulated the abandonment doctrine in the seminal case of *Pennsylvania Insurance Guaranty Ass'n v. Sikes.*[8] *Sikes* arose from an attorney's failure to deny certain allegations in an underlying civil case. Although the attorney had later moved to amend his answer, the trial judge denied his motion.[9] The attorney recommended that his client appeal the decision, but the client decided to settle the case.[10] The client then sued the attorney for malpractice.[11] The court of appeals affirmed the trial court's grant of summary judgment, holding that "on the facts of this case, ... the settlement of the underlying personal injury case, while the appeal was pending, constituted an abandonment of any claim that [the client's] loss resulted from

legal malpractice rather than judicial error."[12]

¶ 15 Subsequently, in *Segall v. Segall,*[13] the Florida Court of Appeals rearticulated its apparent commitment to the abandonment doctrine, citing *Sikes* and stating that "[w]here a party's loss results from judicial error occasioned by the attorney's curable, nonprejudicial mistake in the conduct of the litigation, and the error would most likely have been corrected on appeal, the cause of action for legal malpractice is abandoned if a final appellate decision is not obtained."[14]

¶ 16 Other state appellate courts have also adopted the abandonment doctrine in some form. For example, in the Ohio case of *E.B.P., Inc. v. Cozza & Steuer,*[15] a client decided to settle a case in lieu of pursuing an appeal and then sued its law firm for malpractice. The court ruled that the client had abandoned its claim, noting that "[a] settlement entered into as a result of an attorney's exercise of reasonable judgment in handling a case bars [a] malpractice claim against the attorney."[16] Similarly, a New York Supreme Court has indicated that where "plaintiffs, by their own conduct in voluntarily settling prior to the appeal, precluded defendant from pursuing the very means by which he could have vindicated his representation ... [,][t]hey should not ... be permitted to seek damages from counsel in order to recoup a portion of the settlement."[17]

¶ 17 Taken in isolation, these statements appear to support the broad formulation of the abandonment doctrine that the district court adopted when it held that Shangri-La

---

6. *Arndt v. First Interstate Bank of Utah N.A.,* 1999 UT 91, ¶ 17, 991 P.2d 584 (indicating that on matters of first impression this court considers it appropriate to look to "case law from other jurisdictions for guidance").

7. Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 21.16 (2006 ed.).

8. 590 So.2d 1051 (Fla.Dist.Ct.App.1991).

9. *Id.* at 1052.

10. *Id.*

11. *Id.*

12. *Id.* at 1053.

13. 632 So.2d 76 (Fla.Dist.Ct.App.1993).

14. *Id.* at 78.

15. 119 Ohio App.3d 177, 694 N.E.2d 1376, 1377 (1997).

16. *Id.* at 1379.

17. *Rodriguez v. Fredericks,* 213 A.D.2d 176, 623 N.Y.S.2d 241, 242 (1995); *see also Chem. Bank of N.J. Nat'l Ass'n v. Bailey,* 296 N.J.Super. 515, 687 A.2d 316, 321 (Ct.App.Div.1997) ("[T]he settlement eliminated [the attorney's] opportunity to prove that her legal malpractice was not a proximate cause of any loss eventually sustained by [the client].").

had "forfeited [its] right to pursue any malpractice action against defendants in this case" by settling the underlying redemption lawsuit. We are not convinced, however, that the cases on which the district court relied support such a broad, unforgiving rule. Instead, when read closely and examined in the context of subsequent precedent, it appears that these cases were decided on traditional principles of proximate cause, rather than on a wholesale application of the abandonment doctrine.

¶ 18 For example, in *Sikes*, the attorney's negligence was simply not the proximate cause of the client's damages. Because any possible negligence would have been "curable except for a judicial error," it apparently was judicial error rather than attorney negligence that caused the client's losses.[18] As the *Sikes* court specifically stated, "A reversal of a trial court's order that denies an attorney the opportunity to cure a nonprejudicial defect and enters a judgment for the opposing side because of the alleged defect, determines, essentially, that there was judicial error rather than legal malpractice."[19] Thus, even though the court affirmed the summary judgment on abandonment doctrine grounds, its underlying conclusion was that the attorney had not caused the client's loss.[20]

¶ 19 Similarly, in *Segall*, although the court relied in part on the abandonment theory, it also implied that summary judgment was appropriate because the plaintiffs were unable to show that it was attorney malpractice, rather than judicial error, that caused their losses in the underlying litigation.[21] They consequently could not establish redressable harm.[22] The *Segall* court also emphasized that it was "unable to establish a bright-line rule that complete appellate review of the underlying litigation is a condition precedent to every legal malpractice action."[23] Instead, it recognized that courts must look to the underlying facts of each case.[24]

¶ 20 Although it articulated some tenets of the abandonment doctrine, the court in *E.B.P., Inc.* similarly refused to "suggest [that] a settlement of the underlying action always operates as a waiver of a client's malpractice claim against his attorney."[25] Instead, *E.B.P., Inc.* was decided primarily on principles of causation. The court indicated that because the trial court erred in not granting a motion, "the losses sustained by [the client] [were] not attributable to any error by [the law firm]."[26] As such, it concluded that the client "failed to establish that it suffered damages proximately caused by [the law firm's] representation," and summary judgment was appropriate.[27]

¶ 21 Subsequent precedent from these jurisdictions supports our conclusion that the abandonment doctrine is not applied as broadly as Turner suggests. This precedent reveals that these jurisdictions have increasingly attempted to limit application of the abandonment theory and instead rely on traditional causation principles.[28] For instance,

18. *Pa. Ins. Guar. Ass'n v. Sikes*, 590 So.2d 1051, 1052–53 (Fla.Dist.Ct.App.1991).

19. *Id.* at 1052.

20. *See id.*

21. *Segall v. Segall*, 632 So.2d 76, 78 (Fla.Dist.Ct. App.1993).

22. *Id.*

23. *Id.*

24. *See id.*

25. *E.B.P., Inc. v. Cozza & Steuer*, 119 Ohio App.3d 177, 694 N.E.2d 1376, 1379 (1997); *see also Rodriguez v. Fredericks*, 213 A.D.2d 176, 623 N.Y.S.2d 241, 242 (1995) (indicating the court's belief that counsel had pursued a "thoughtful strategy" and had not likely caused the plaintiff's damages).

26. *E.B.P., Inc.*, 694 N.E.2d at 1379.

27. *Id.* at 1378–79.

28. *See, e.g., Parker v. Graham & James*, 715 So.2d 1047, 1048 (Fla.Dist.Ct.App.1998) (refusing to apply the abandonment theory because "[i]n this case, unlike *Sikes* and *Segall*, the settlement did *not* thwart any review process which could have cured the malpractice"); *Lenahan v. Forkey*, 702 So.2d 610, 611–12 (Fla.Dist.Ct.App.1997) (indicating that "[t]he circumstances in which a client's subsequent actions constitute an abandonment of a legal malpractice claim, as a matter of law, are very narrow" and that "as a matter of law, the circumstances of this case do not constitute abandonment"); *Fusco v. Fauci*,

in the Florida case of *Eastman v. Flor–Ohio, Ltd.,*[29] the court expressly limited the scope of the abandonment doctrine, stating that "only under narrow circumstances should a cause of action for legal malpractice be deemed abandoned based upon the voluntary dismissal of the appeal taken from a related adverse judgment." The court hypothesized that the only reason the *Sikes* court felt comfortable using the abandonment doctrine was that it recognized there had been "an error made by the trial court which would have been corrected had the appeal not been dismissed."[30] As such, "counsel had not been negligent" and had not caused the client's loss.[31]

¶ 22 In effect, these subsequent cases support the conclusion that the abandonment doctrine is applicable only in those cases where causation cannot be established. Although these jurisdictions have been unwilling to completely discard the abandonment doctrine label, these limitations have significantly narrowed its possible uses to instances where the alleged attorney malpractice was not the proximate cause of the client's loss.

## B. We Need Not Adopt the Abandonment Doctrine to Dispose of Cases that Could Be Decided on Causation Principles

¶ 23 Because other jurisdictions have relied on the abandonment doctrine only in those cases that could also have been decided on traditional causation principles, we see no

need to adopt the abandonment doctrine at this time. Instead, we conclude that it is more appropriate to examine whether the individual facts of each case support a finding of proximate cause. This decision is supported by both existing Utah law and policy considerations.

¶ 24 First, there is no reason to adopt the abandonment doctrine theory because the existing framework for legal malpractice actions in Utah adequately protects attorneys' rights, even when there has been a settlement. One of the primary concerns that spurred the establishment of the abandonment doctrine was the fear that attorneys would not be able to defend against negligence claims arising from their handling of a litigation matter if the underlying matter were settled before an unfavorable decision could be challenged on appeal.[32] But in Utah, it generally does not matter whether an underlying matter is settled before appeal because courts and juries retain the ability to review the underlying matter and determine what should have happened. In other words, they can still determine whether it was attorney malpractice or judicial error that caused the plaintiff's damages.[33]

¶ 25 We explained the process in *Harline v. Barker,* where we stated:

To prove proximate cause in legal malpractice cases ... the plaintiff must show that absent the attorney's negligence, the un-

---

299 A.D.2d 263, 749 N.Y.S.2d 715, 715 (2002) ("Settlement of an action will not preclude an award of damages for legal malpractice where the plaintiff is able to demonstrate that the settlement was caused by the malpractice."); *Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae,* 243 A.D.2d 168, 674 N.Y.S.2d 280, 285 (1998) (indicating that because there were material issues of fact concerning the attorney's alleged negligence, the plaintiff's settlement of the underlying action did "not present an intervening cause so as to bar a malpractice action"); *Lattimore v. Bergman,* 224 A.D.2d 497, 637 N.Y.S.2d 777, 777 (1996) (refusing to apply the abandonment doctrine because the plaintiffs "demonstrated that there are issues of fact as to their former attorney's negligence").

**29.** 744 So.2d 499, 503 (Fla.Dist.Ct.App.1999).

**30.** *Id.* at 502.

**31.** *Id.*

**32.** *See, e.g., Segall v. Segall,* 632 So.2d 76, 78 (Fla.Dist.Ct.App.1993) (indicating that the abandonment theory should apply in cases where "redressable harm caused by errors in the course of litigation can only be determined upon completion of the appellate process"); *Chem. Bank of N.J. Nat'l Ass'n v. Bailey,* 296 N.J.Super. 515, 687 A.2d 316, 321 (1997) (indicating concern over the fact that "the settlement eliminated [the attorney's] opportunity to prove that her legal malpractice was not a proximate cause of any loss eventually sustained by [her client]"); *Rodriguez v. Fredericks,* 213 A.D.2d 176, 623 N.Y.S.2d 241, 242 (1995) ("[V]oluntarily settling prior to the appeal precluded [the attorney] from pursuing the very means by which he could have vindicated his representation.").

**33.** *Harline v. Barker,* 912 P.2d 433, 439 (Utah 1996); *see also* Mallen & Smith, *supra* note 7, § 33.8.

derlying suit would have been successful. Thus, the proximate cause issue is ordinarily handled by means of a "suit within a suit" or "trial within a trial." The objective is to establish what the result [of the underlying litigation] should have been (an objective standard), not what a particular judge or jury would have decided (a subjective standard).[34]

This "trial within a trial" method allows an attorney to establish that judicial error, rather than attorney malpractice, caused an unfavorable result in an underlying case. Because issues of causation can be determined through this method even in those cases where the underlying suit is settled, there is no reason to adopt the abandonment doctrine.

¶ 26 Policy considerations also support deciding cases under traditional causation principles, rather than under the abandonment doctrine. In *Hewitt v. Allen*,[35] the Nevada Supreme Court concluded that there are

> "serious policy reasons which militate against liberalizing the abandonment theory beyond the narrow parameters set forth in *Sikes*. Perhaps the least compelling reason is the negative effect such a ruling would have on the work load of the appellate courts. If we were to issue a ruling that appeals are required in all cases in order to preserve the client's right to subsequently pursue a claim for legal malpractice, mertiess [sic] appeals would be prosecuted by litigants solely for the purpose of preserving their right to later assert a malpractice claim. Of course, such a ruling would also discourage parties from settling pending appeals and would be inconsistent with the party's legal duty to mitigate their damages."[36]

¶ 27 Other courts have likewise recognized that adopting broad formulations of the abandonment doctrine could thwart potential settlements and discourage damage mitigation.[37] We too are cognizant of these concerns[38] and find that such policy considerations counsel against adopting the abandonment doctrine.

¶ 28 For these reasons, we conclude that the district court erred in holding that Shangri-La forfeited its right to pursue its malpractice action when it settled the redemption lawsuit before the appeal could be completed. Moreover, because Shangri-La's settlement of the underlying lawsuit did not affect the ability of the malpractice court to determine issues of causation (e.g., what the result should have been and what the underlying trial court should have done), adopting the doctrine was simply unnecessary. In so doing, we emphasize that we are not foreclosing the possibility of ever applying the abandonment doctrine. Rather, we simply conclude that it was unnecessary to apply the doctrine in this case, which can be summarily resolved on traditional causation principles.

## II. SUMMARY JUDGMENT WAS PROPER BECAUSE JUDICIAL ERROR, NOT TURNER'S ACTIONS, CAUSED SHANGRI-LA'S LOSS

 ¶ 29 Having determined that Shangri-La did not forfeit its right to pursue a malpractice claim by settling the underlying redemption lawsuit, we consider whether Turner was nonetheless entitled to summary judgment on Shangri-La's malpractice claim. We begin by reviewing the requisite elements of a claim for legal malpractice, focusing our attention on the causation element. We then examine Shangri-La's claims that Turner was negligent in (1) failing to timely

---

**34.** 912 P.2d at 439–40 (citation and some internal quotation marks omitted).

**35.** 118 Nev. 216, 43 P.3d 345 (2002).

**36.** *Id.* at 349–50 (alterations in original) (quoting *Eastman v. Flor-Ohio, Ltd.*, 744 So.2d 499, 504 (Fla.Dist.Ct.App.1999)).

**37.** *See, e.g., Eastman*, 744 So.2d at 504 (listing various policy reasons that weigh against applying a broad abandonment rule); *Parker v. Gra-*

*ham & James*, 715 So.2d 1047, 1048 (Fla.Dist.Ct. App.1998) (indicating that settling the claim "would only have served to mitigate [plaintiffs'] damages"). *See generally* 66 Am.Jur.2d *Release* § 2 (2005) (stating that the law favors settlement).

**38.** *See Jankele v. Texas Co.*, 88 Utah 325, 54 P.2d 425, 428 (1936) (stating that harmed parties must act reasonably to minimize damages).

raise arguments against the application of the unlawful detainer statute, and (2) failing to advance Utah Rule of Civil Procedure 69(j) as the correct measure of damages. For the reasons detailed below, we find, as a matter of law, that Turner's actions did not proximately cause Shangri–La's damages in either respect. We therefore affirm the district court's grant of summary judgment.

## A. Causation

¶ 30 "In a legal malpractice action, a plaintiff must plead and prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages."[39] To resolve this appeal, we need only examine the element of causation.

¶ 31 "Proximate cause is that cause which, in natural and continuous sequence (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury."[40] In order to prove proximate cause, a plaintiff must show that "the lawyer's breach of a duty of care ... was a legal cause of injury,"[41] and "that absent the attorney's negligence, the underlying suit would have been successful."[42] Normally, "[t]he rule is that the issue of proximate

causation—whether the attorney's negligence caused damage—raises an issue of fact"[43] and therefore cannot be decided on summary judgment.

¶ 32 There is, however, an exception to this rule. "[P]roximate cause issues can be decided as a matter of law when a determination of the facts falls on either of two opposite ends of a factual continuum[:] ... (i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and (ii) when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law."[44]

¶ 33 Accordingly, summary judgment is appropriate where there is no doubt that judicial error, rather than attorney malpractice, caused a client's losses. As previously discussed, some jurisdictions, often through the guise of an abandonment doctrine, have concluded that a plaintiff cannot establish a claim for legal malpractice where judicial error was the proximate cause of the adverse result.[45] We agree. Where an attorney has raised and preserved all relevant legal considerations in an appropriate procedural manner and a court nevertheless commits judicial error, the attorney's actions cannot be considered the proximate cause of the client's loss. Although a client may believe that an attorney has not litigated a case in the most effective manner possible,[46] such

**39.** *Harline v. Barker,* 912 P.2d 433, 439 (Utah 1996).

**40.** *Id.* (internal quotation marks and alterations omitted).

**41.** Restatement (Third) of the Law Governing Lawyers § 53 (2000).

**42.** *Harline,* 912 P.2d at 439.

**43.** Mallen & Smith, *supra* note 7, § 33.12.

**44.** *Harline,* 912 P.2d at 439.

**45.** *See, e.g., Pa. Ins. Guar. Ass'n v. Sikes,* 590 So.2d 1051, 1052 (Fla.Dist.Ct.App.1991) ("A reversal of a trial court's order that denies an attorney the opportunity to cure a nonprejudicial defect and enters a judgment for the opposing side because of the alleged defect, determines, essentially, that there was judicial error rather

than legal malpractice."); *Cedeno v. Gumbiner,* 347 Ill.App.3d 169, 282 Ill.Dec. 600, 806 N.E.2d 1188, 1194 (2004) (finding that where the court's "misapplication of the law served as an intervening cause, it cannot be said that plaintiff's damages proximately resulted from" the attorney's actions, and summary judgment was therefore appropriate); *Hewitt v. Allen,* 118 Nev. 216, 43 P.3d 345, 348 (2002) (concluding that "[i]n cases where no appeal from an adverse ruling was filed, the defendants in the legal malpractice action are able to assert, as an affirmative defense, that the proximate cause of damages was not the attorney's negligence but judicial error that could have been corrected on appeal").

**46.** *See Rodriguez v. Fredericks,* 213 A.D.2d 176, 623 N.Y.S.2d 241, 242 (1995) ("Plaintiffs' remaining claims also amount to no more than retrospective complaints about the outcome of defendant's strategic choices and tactics, without

beliefs are irrelevant where the attorney has presented the necessary arguments and the judge, albeit in error, rejects them. Were it otherwise, an attorney would be subject to liability every time a judge erroneously ruled against the attorney's client.[47] In effect, an attorney would become a guarantor of correct judicial decisionmaking—a result we cannot accept.

¶ 34 In articulating this rule, we are not holding that judicial error always forecloses a plaintiff from bringing a malpractice suit. Where there are factual disputes surrounding causation, determining "whether the attorney's conduct was a substantial factor in the result or whether there should have been a better result had the attorney done otherwise" will remain a question for the trier of fact.[48] But when an attorney has raised the appropriate arguments and the court nevertheless commits judicial error, a plaintiff's suit can be appropriately dismissed on summary judgment.[49]

¶ 35 In this case, Shangri–La claims that Turner's negligence caused the adverse ruling entered against it in the underlying redemption lawsuit. Specifically, Shangri–La alleges that Turner was negligent by (1) failing to object to the application of the unlawful detainer statute in a timely manner, and (2) failing to advance rule 69(j)(3) and (7) of the Utah Rules of Civil Procedure as the appropriate measure of damages. We address each claim in turn.

### B. Unlawful Detainer Statute

¶ 36 Upon reviewing the relevant statutory language, we conclude that it was error for the trial court to apply the unlawful detainer statute to the redemption lawsuit and award treble damages under that statute. The express language of the unlawful detainer statute applies only to tenants "for a term less than life,"[50] and Shangri–La was never a tenant. Despite this obvious judicial error, Shangri–La nevertheless contends that Turner's malpractice was the cause of the adverse judgment. Specifically, Shangri–La argues that Turner was negligent in failing to contest the application of the unlawful detainer statute until supplementary briefing on the issue of treble damages. Shangri–La reasons that this failure "allowed the trial court to proceed too far down the wrong road" and that had Turner raised the argument earlier, the court would not have erred.

¶ 37 The record simply does not support Shangri–La's claim. It is true that, at one point during the trial of the underlying case, when answering a question about rents, Turner implied that the unlawful detainer statute might apply. But Turner cured any possible mistake when he specifically argued against application of the unlawful detainer statute in his supplementary brief. Further, nothing in the record suggests that the trial judge refused to consider Turner's objection to the application of the unlawful detainer statute because Turner did not raise it until supplementary briefing. In short, it is undisputed that Turner raised the operative arguments in his supplementary briefing and that the trial judge considered the supplementary briefing before issuing his final ruling in the underlying case. Accordingly, it was judicial error that necessitated Shangri–La's ap-

demonstrating that those exercises of judgment were so unreasonable at the inception as to have manifested professional incompetence.").

**47.** See Cedeno, 282 Ill.Dec. 600, 806 N.E.2d at 1194 (indicating that attorney "defendants cannot be held accountable for the court's acceptance of a legally unsound basis for granting summary judgment against [their client]"). See generally Mallen & Smith, supra note 7, § 18.1 ("Subjecting attorneys to liability simply because a judge disagrees can be unfair.").

**48.** Mallen & Smith, supra note 7, § 33.12.

**49.** See, e.g., Eastman v. Flor–Ohio, Ltd., 744 So.2d 499, 503–05 (Fla.Dist.Ct.App.1999) (examining the underlying case to determine whether

judicial error had been committed, which would allow the case to be disposed of on summary judgment); Pa. Ins. Guar. Ass'n v. Sikes, 590 So.2d 1051, 1052 (Fla.Dist.Ct.App.1991) (affirming a grant of summary judgment because the opposing party abandoned its claim and the attorney did not cause the client's damages since there was judicial error); Cedeno, 282 Ill.Dec. 600, 806 N.E.2d at 1194 (indicating that judicial error, not the attorney's malpractice, was the proximate cause of the plaintiff's damages; therefore, summary judgment was appropriate).

**50.** Utah Code Ann. § 78–36–3(1) (2002).

peal—judicial error that cannot be attributed to Turner's actions and that presumably would have been corrected on appeal had the underlying redemption action not been settled.

### C. Rule 69(j)(3) and (7)

¶ 38 Shangri–La also argues that Turner's malpractice caused it to incur an excessively high redemption fee. Specifically, Shangri–La points to Turner's failure to present to the trial court applicable language from Utah Rule of Civil Procedure 69(j), particularly subparagraphs (3) and (7). Subparagraph (3) of rule 69(j) governs the time for redemption and the amount to· be paid. Subparagraph (7) indicates that a purchaser is entitled to receive rents until the time of redemption but that "the amounts of such rents and profits shall be a credit upon the redemption money to be paid." [51] There is no dispute that these subsections, rather than the unlawful detainer statute, were the appropriate measure of damages in the underlying case. But after reviewing the record, we disagree with Shangri–La's allegation that Turner failed to present rule 69(j) to the trial court.

¶ 39 Although Turner failed to raise rule 69(j) prior to the trial court issuing its initial decision, Turner did present the rule when he moved for a new trial or to have the judgment amended. In his reply to Shangri–La's memorandum in opposition to this motion, Turner argued that because the court awarded equitable redemption, it should also have applied rule 69(j), which governs redemption. Turner then proceeded to quote relevant language from rule 69(j)(3) and (7) and apply those subsections to the facts of the underlying case.

¶ 40 Turner, therefore, clearly presented the rule 69 issue to the trial court. Once the trial court was presented with these arguments, it had the ability to amend its judgment under Utah Rule of Civil Procedure 59, which allows for "a new trial [to] be granted" or if the action was tried without a jury, for a judge to "amend findings of fact and conclusions of law or make new findings and conclusions" when there has been an "[e]rror in law." [52] Although a trial court has broad discretion to decide whether to grant relief under this rule,[53] a trial court must grant the motion if the "prior decision was clearly erroneous and would work a manifest injustice." [54]

¶ 41 In ruling on Turner's motion for a new trial, the trial judge never indicated that he was refusing to consider the rule 69 issue because it had not been raised earlier. Instead, the trial judge apparently rejected the motion after an evaluation of the merits of the case, stating that he was "of the opinion that the arguments made by plaintiffs in this case [were] in substance the same arguments that [had] previously been made." Having considered the merits of the motion—including objections to the application of the unlawful detainer statute and assertions that rule 69 should have been applied instead—the trial court clearly erred, and therefore abused its discretion, when it refused to amend the judgment. Had the appeal proceeded, the appellate court should have reversed the trial court's decision.[55] Thus, it

---

51. Utah R. Civ. P. 69(j)(7) (1995) (repealed 2004).

52. *Id.* 59(a), (a)(7).

53. *See Doty v. Town of Cedar Hills,* 656 P.2d 993, 995 (Utah 1982) (indicating that "orders granting or denying motions for a new trial will not be reversed by this Court unless there has been a manifest abuse of discretion" (internal quotation marks omitted)).

54. *Thurston v. Box Elder County,* 892 P.2d 1034, 1039 (Utah 1995); *see also Doty,* 656 P.2d at 996 ("[I]t was an abuse of discretion to deny the defendant's Motion to Amend Judgment or for a New Trial which claimed error in law.").

55. For the reasons indicated above, we are convinced that Turner preserved both the unlawful detainer and rule 69 issues and therefore could have properly raised both of these issues on appeal. But ultimately Turner's preservation of rule 69 is irrelevant because Turner absolutely preserved the argument that the unlawful detainer statute was not the applicable measure of damages. Because the unlawful detainer statute was clearly the wrong measure of damages, another measure of damages had to apply. Rule 69 was the appropriate measure, and the appellate court would have had to apply it regardless of whether Turner had raised or preserved it in the trial court.

was judicial error, not Turner's timeliness in presenting rule 69, that proximately caused Shangri–La's injury.

¶ 42 We conclude that there are no genuine issues of material fact regarding whether Turner caused Shangri–La's damages through his allegedly untimely presentation of the unlawful detainer statute and rule 69. Because the undisputed facts establish that the proximate cause of Shangri–La's injury was judicial error, we affirm the district court's grant of summary judgment in favor of Turner.

## CONCLUSION

¶ 43 This case can be decided on causation principles. We accordingly decline to adopt a categorical rule foreclosing malpractice suits arising from cases where a party settles instead of pursuing an appeal. In this case, Turner did not proximately cause Shangri–La to incur an excessively high redemption fee; rather, the excessively high fee was the result of judicial error. We therefore affirm the district court's entry of summary judgment in favor of Turner.

¶ 44 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice Parrish's opinion.