# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**625**

**CA 13-00036**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, SCONIERS, AND WHALEN, JJ.

---

JOHN W. GRACE, PLAINTIFF-RESPONDENT,

                 V                                 MEMORANDUM AND ORDER

MICHAEL R. LAW, PHILLIPS LYTLE, LLP, ROBERT L.
BRENNA, JR., AND BRENNA, BRENNA & BOYCE, PLLC,
DEFENDANTS-APPELLANTS.

---

PHILLIPS LYTLE, LLP, BUFFALO (KEVIN J. ENGLISH OF COUNSEL), FOR
DEFENDANTS-APPELLANTS MICHAEL R. LAW AND PHILLIPS LYTLE, LLP.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., SYRACUSE (GREGORY D. ERIKSEN OF
COUNSEL), FOR DEFENDANTS-APPELLANTS ROBERT L. BRENNA, JR. AND BRENNA,
BRENNA & BOYCE, PLLC.

LOTEMPIO & BROWN, P.C., BUFFALO (BRIAN J. BOGNER OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---

     Appeals from an order of the Supreme Court, Erie Court (Shirley
Troutman, J.), entered October 3, 2012. The order, insofar as
appealed from, denied the motion of defendants Robert L. Brenna, Jr.,
and Brenna, Brenna & Boyce, PLLC for summary judgment and denied that
part of the cross motion of defendants Michael R. Law and Phillips
Lytle, LLP seeking summary judgment.

     It is hereby ORDERED that the order so appealed from is affirmed
without costs.

     Memorandum: Plaintiff commenced this legal malpractice action
seeking damages for the alleged negligence of defendants in their
representation of him in a medical malpractice action arising from his
treatment for an eye condition at the Veterans Administration
Outpatient Clinic in Rochester. In August 2006, defendants Robert L.
Brenna, Jr. and Brenna, Brenna & Boyce, PLLC (hereafter, Brenna
defendants) commenced an administrative tort claim against the United
States on plaintiff's behalf by filing an SF-95 form with the Veterans
Administration (hereafter, VA). After six months elapsed without a
response from the government, Brenna recommended that plaintiff retain
defendants Michael R. Law and Phillips Lytle, LLP (hereafter, Law
defendants) to pursue a medical malpractice claim in federal court.
Plaintiff retained the Law defendants in or about July 2007 and, on
January 3, 2008, the Law defendants filed a complaint in the United
States District Court for the Western District of New York against the
United States and the VA (collectively, government) under the Federal

Tort Claims Act ([FTCA] 28 USC § 2671 *et seq.*).  The complaint
alleged, inter alia, that the VA failed to monitor and/or treat
plaintiff's eye condition in a proper and timely manner, thereby
resulting in the loss of vision in plaintiff's right eye.

While preparing for the deposition of Dr. Shobha Boghani, the
physician who primarily treated plaintiff at the VA, the government
apparently discovered that Dr. Boghani was employed by the University
of Rochester (hereafter, U of R).  As a result, in October 2008, the
government sought and was granted leave to file a third-party action
against Dr. Boghani and the U of R.  The addition of the U of R
created a conflict for the Law defendants and, as a result, the Brenna
defendants assumed sole responsibility for the medical malpractice
action in December 2008.  On May 22, 2009, Brenna filed an amended
complaint in federal court naming the U of R and Dr. Boghani as
defendants and asserting state-law claims for medical malpractice.  By
order dated November 3, 2010, District Court granted the motion of the
U of R and Dr. Boghani for summary judgment dismissing the amended
complaint against them as time-barred.  The court also granted the
government's motion for summary judgment dismissing the FTCA claims
against it insofar as based upon the alleged negligence of the U of R
and Dr. Boghani, concluding that Dr. Boghani was an independent
contractor and not an employee of the VA.  The only remaining claim in
the amended complaint was that the VA was negligent in failing to
reschedule an ophthalmology appointment after a July 2003 appointment
was cancelled.

Shortly thereafter, plaintiff directed the Brenna defendants to
discontinue the federal action and, on December 16, 2011, a
stipulation of discontinuance was entered in federal court.  Plaintiff
then commenced this legal malpractice action alleging, inter alia,
that defendants were negligent in failing to name Dr. Boghani and the
U of R in the initial complaint in federal court.  The Brenna
defendants subsequently moved for summary judgment dismissing the
complaint against them, and the Law defendants cross-moved for leave
to amend their answer to add a statute of limitations defense and for
summary judgment dismissing the complaint against them.  Supreme Court
denied the Brenna defendants' motion, granted that part of the Law
defendants' cross motion seeking leave to amend their answer, and
denied that part of their cross motion for summary judgment dismissing
the complaint against them.  We affirm.

"To establish a cause of action to recover damages for legal
malpractice, a plaintiff must prove that the defendant attorney failed
to exercise 'the ordinary reasonable skill and knowledge commonly
possessed by a member of the legal community, and that the attorney's
breach of [that] duty proximately caused plaintiff to sustain actual
and ascertainable damages' " (*Velie v Ellis Law, P.C.*, 48 AD3d 674,
675).  "To obtain summary judgment dismissing a complaint in an action
to recover damages for legal malpractice, a defendant must demonstrate
that the plaintiff is unable to prove at least one of the essential
elements of [his or her] legal malpractice cause of action" (*Boglia v
Greenberg*, 63 AD3d 973, 974; *see Pignataro v Welsh*, 38 AD3d 1320,
1320, *lv denied* 9 NY3d 849).

Initially, we reject defendants' contention that plaintiff waived or abandoned his legal malpractice claim by voluntarily discontinuing what remained of his medical malpractice action and failing to take an appeal from District Court's November 2010 order dismissing the bulk of his claims.  In support of that contention, defendants primarily rely upon this Court's decision in *Rupert v Gates & Adams, P.C.* (83 AD3d 1393, 1396), in which we concluded that the plaintiff waived his right to raise certain allegations of legal malpractice in the context of a matrimonial action based upon his execution of a settlement agreement.  Specifically, we concluded that, although certain allegations of legal malpractice had merit, Supreme Court in that case "did not err in granting defendants' motion concerning those alleged errors because they could have been corrected on an appeal from the final judgment in the matrimonial action, *and plaintiff consented to the dismissal on the merits of any appeal in the matrimonial action as part of the global settlement resolving a bankruptcy proceeding in which he was involved*.  In so doing, plaintiff precluded pursuit of the very means by which defendants' representation of plaintiff in the matrimonial action could have been vindicated . . . We therefore conclude that plaintiff, *by virtue of his global settlement*, waived the right to raise those shortcomings in this legal malpractice action" (*id.* [emphasis added]).

Here, unlike in *Rupert*, plaintiff did not, as part of a settlement agreement or otherwise, waive his right to raise the claim that defendants committed malpractice in the underlying action by failing to sue the appropriate parties before the expiration of the applicable statute of limitations.  Rather, plaintiff discontinued his federal medical malpractice action, which the court had reduced to the claim that employees of the VA were negligent in failing to reschedule a cancelled ophthalmology appointment, and commenced this legal malpractice action in state court.  We reject defendants' invitation to extend the ruling in *Rupert* to a per se rule that a party who voluntarily discontinues an underlying action and forgoes an appeal thereby abandons his or her right to pursue a claim for legal malpractice.  Indeed, we noted in *Rupert* that, in determining that the court erred in granting the defendants' cross motion for summary judgment dismissing the complaint in the context of a prior appeal (*Rupert v Gates & Adams, P.C.*, 48 AD3d 1221), we "necessarily rejected the very premise upon which the court denied the instant motion for summary judgment," i.e., that "this legal malpractice action is barred by [the] plaintiff's failure to perfect an appeal from the judgment in the matrimonial action" (*id.* at 1395).

Although the precise question presented herein appears to be an issue of first impression in New York, we note that several of our sister states have rejected the per se rule advanced by defendants herein (*see e.g. MB Indus., LLC v CNA Ins. Co.*, 74 So 3d 1173, 1176; *Hewitt v Allen*, 118 Nev 216, 217-218, 43 P3d 345, 345-346; *Eastman v Flor-Ohio, Ltd.*, 744 So 2d 499, 502-504; *Segall v Segall*, 632 So 2d 76, 78).  As has been noted, such a rule would force parties to prosecute potentially meritless appeals to their judicial conclusion in order to preserve their right to commence a malpractice action, thereby increasing the costs of litigation and overburdening the court

system (*see Eastman*, 744 So 2d at 504). The additional time spent to pursue an unlikely appellate remedy could also result in expiration of the statute of limitations on the legal malpractice claim (*see MB Indus.*, 74 So 3d at 1181). Further, requiring parties to exhaust the appellate process prior to commencing a legal malpractice action would discourage settlements and potentially conflict with an injured party's duty to mitigate damages (*see Crestwood Cove Apts. Bus. Trust v Turner*, 164 P3d 1247, 1254; *Eastman*, 744 So 2d at 504).

Here, we conclude that defendants failed to establish as a matter of law that any alleged negligence on their part was not a proximate cause of plaintiff's damages (*see Wilk v Lewis & Lewis, P.C.*, 75 AD3d 1063, 1066; *New Kayak Pool Corp. v Kavinoky Cook, LLP*, 74 AD3d 1852, 1853; *Andzel v Cosgrove*, 56 AD3d 1226, 1227). Specifically, defendants failed to establish that plaintiff was likely to succeed on an appeal from the November 2010 order and, therefore, that their alleged negligence was not a proximate cause of his damages (*see Crestwood Cove Apts. Bus. Trust*, 164 P3d at 1252; *Hewitt*, 118 Nev at 222, 43 P3d at 348; *see also Technical Packaging, Inc. v Hanchett*, 992 So 2d 309, 316, *review denied* 6 So 3d 52; *cf. Bradley v Davis*, 777 So 2d 1189, 1190, *dismissed* 805 So 2d 804, *cert denied* 535 US 926). Notably, the record before us does not include the full record from the underlying action, i.e., the record that would have been before the Second Circuit on an appeal (*see Technical Packaging, Inc.*, 922 So 2d at 315). Thus, while defendants "may be able to show that [their] representation of [plaintiff] did not preclude [him] from prevailing in the [underlying] lawsuit [or upon appeal], [they have] not done so at this time" (*Lenahan v Russell L. Forkey, P.A.*, 702 So 2d 610, 612).

The Law defendants also contended in support of that part of their cross motion for summary judgment dismissing the complaint against them that the action was time-barred. Even assuming, arguendo, that they met their initial burden on the cross motion in that respect, we conclude that plaintiff raised a triable issue of fact whether the continuous representation doctrine applied to toll the statute of limitations (*see Sobel v Ansanelli*, 98 AD3d 1020, 1023; *International Electron Devices [USA] LLC v Menter, Rudin & Trivelpiece, P.C.*, 71 AD3d 1512, 1512-1513).

All concur except WHALEN, J., who dissents and votes to reverse the order insofar as appealed from in accordance with the following Memorandum: I respectfully dissent because, in my view, plaintiff is precluded as a matter of law from bringing this legal malpractice action based upon his voluntary discontinuance of the underlying federal action and failure to pursue a nonfrivolous appeal. It is important to note that, if plaintiff had been successful in his appeal in the underlying federal action, we would not have a subsequent legal malpractice case.

In the underlying federal medical malpractice case, defendants failed to name a certain physician as a defendant, which is the basis of the subsequent legal malpractice claim. Defendants' contention is that the physician was a government employee and thus was not required to be named individually as a defendant because the government was

already a party.  The federal trial court determined that the physician was an independent contractor, not a government employee.  I conclude that defendants would have had a meritorious argument had plaintiff taken an appeal from the federal order based upon case law supporting defendants' position that the physician was a government employee as opposed to an independent contractor.  Federal courts have employed the "control test" to determine if an individual or other entity equitably should be considered an "employee" of the federal government for purposes of the Federal Tort Claims Act ([FTCA] 28 USC § 2671 *et seq.*) because the FTCA waives sovereign immunity for the torts of employees of the government but not for those of its independent contractors (*see United States v Orleans*, 425 US 807, 813-814).  "[I]t is well settled that the question whether one is an employee of the United States is to be determined by federal law" (*Lurch v United States*, 719 F2d 333, 337 [10th Cir 1983], *cert denied* 466 US 927).  Courts look to factors such as which entity determined the amount of the individual's salary, who actually paid that sum, whether the government exercised day-to-day control over the individual, what entity determined the individual's work hours and provided for vacation leave, whether the government had the authority to review the individual's performance and any other factors relating to the government's exercise of control over the individual's work (*see Leone v United States*, 910 F2d 46, 50 [2d Cir 1990], *cert denied* 499 US 905; *see also Tivoli v United States*, 1996 WL 1056005, *3-5 [SD NY], *affd* 164 F3d 619 [2d Cir 1998]; *Lurch*, 719 F2d at 336-337 [reciting test and determining that the individual was an independent contractor based on the contract itself]).

In *Tivoli*, physicians employed by Georgetown University (Georgetown) worked full-time at the National Institutes of Health (NIH) (*id.* at *3).  The contract specified the names of the physicians who would serve as "key personnel," and the government had to approve those key personnel so that it could ensure quality physicians (*id.*).  Georgetown had no supervision over any of the physician's day-to-day activities (*id.*).  The NIH set forth by contract the hours that the physicians worked and provided all medical equipment and facilities necessary for the physicians to complete their work (*id.*).  In fact, the only factor demonstrating that the physicians were Georgetown employees was that they received their salaries from Georgetown (*id.* at *4).  The District Court found, based on the various factors, that the physicians were under the control, direction and supervision of the government and thus were employees of the government despite language to the contrary in the contract.  In the case before us now, the physician was mentioned by name in the contract but it is unclear whether this was because the Veterans Administration (VA) requested her specifically or because the University of Rochester designated her as an available physician for the VA.  Had the VA specifically designated the physician, that would be evidence of its having exercised control and could weigh in favor of a finding that she was an employee of the VA.

In *Williams v United States* (2007 WL 951382 [SD NY 2007]), the District Court initially noted that, although the contract declared that the physician was not to be considered a government employee for

any reason, the court was not bound by the language of the contract in determining whether the physician was a government employee for purposes of the FTCA (*see id.* at *10). The court found that the physician, by contract, was to " 'be *under the direction of the Chief* [of Bronx VA]' " and was required to provide his services " 'in accordance with VA policies and procedures,' " and that " 'personnel assignments [by the contracting entity] were subject to the approval of the Bronx VA Chief of Staff' " (*id.* at *11). Finally, the court noted that the government "controlled not only [the physician's] work hours and vacation time . . . , but where he worked, who he saw, and what he did during those hours" (*id.* at *12). In denying the government's motion for summary judgment dismissing the complaint, the court determined that "a reasonable factfinder could conclude that [the physician] qualifie[d] under the FTCA as an 'employee' of the Bronx VA" (*id.*). In the case now before us, the physician was required to work at the VA Outpatient Clinic six days per month. Additionally, other physicians could only be substituted for the named physician in the event that she became permanently or temporarily unavailable due to vacation, illness, emergencies or termination of employment. That is additional evidence weighing in favor of classifying the physician as an employee of the VA.

The federal court in the underlying medical malpractice action herein found that, "[w]hile the fact that the VA provided the place of work, as well as the tools, for the most part, weighs in favor of finding that [the physician] was the VA's agent," consideration of all of the other factors favored a finding that the physician was an independent contractor. An appellate court could disagree with the District Court's weighing of the various factors regarding whether the physician was a government employee. Inasmuch as plaintiff's theoretical appeal to the Second Circuit would have been before a panel for de novo review of whether there was a "genuine factual dispute" for resolution by a jury, plaintiff may have succeeded on appeal in at least a reversal of defendants' respective motions for summary judgment (*Vermont Teddy Bear Co., Inc.* v *1-800 Beargram Co.*, 373 F3d 241, 244). Thus, plaintiff's decision to direct defendants to discontinue the federal action precluded defendants from being vindicated should the appeal have resulted in reversal.

We have held that a plaintiff in a legal malpractice action waived his right to raise certain allegations of malpractice in the context of a matrimonial action based upon his execution of a settlement agreement (*Rupert v Gates & Adams, P.C.*, 83 AD3d 1393). We concluded there that Supreme Court "did not err in granting defendants' motion concerning those alleged errors because they could have been corrected on an appeal from the final judgment in the matrimonial action, and plaintiff consented to the dismissal on the merits of any appeal in the matrimonial action as part of the global settlement resolving a bankruptcy proceeding in which he was involved. In doing so, plaintiff precluded pursuit of the very means by which defendants' representation of plaintiff in the matrimonial action could have been vindicated" (*id.* at 1396).

Our decision in *Rupert* was based upon sound policy and should be

applied here for various reasons, the first being judicial economy. The majority is concerned that forcing a party to pursue a potentially meritless appeal will result in increased costs of litigation and overburdening the court system. As stated previously, I do not view the appeal as meritless here. I believe that allowing a plaintiff to discontinue his or her underlying case in order to pursue a legal malpractice action will result in the increased litigation costs and overburdening of the court system that the majority seeks to avoid. A legal malpractice case requires commencing a separate action that not only involves litigating the legal malpractice action but also involves litigating the underlying action. This may result in additional expert witnesses being called and a more lengthy discovery process because the parties are beginning the litigation of essentially two separate cases in state court as opposed to one in federal court. Importantly, the parties will have to litigate the very issue that would have been decided on appeal in the underlying action in order to resolve the legal malpractice case. This will obviously result in additional costs, attorney fees and use of court resources. However, should a litigant have to pursue an appeal that may correct a potentially erroneous trial court decision in the underlying litigation, a subsequent legal malpractice case may be avoided, thus saving costs and the use of court resources.

Additionally, allowing a litigant to choose to forego the appeal process and commence a legal malpractice action against his or her attorney allows the litigant to select a new defendant that he or she may feel is an easier target before a jury than a physician or hospital would be. I cannot see the merit in allowing a litigant, who does not give his or her attorney an opportunity to pursue a potentially meritorious appeal, to abandon his or her underlying case as a strategic decision in order to pursue a legal malpractice claim against his or her attorney. The appellate review of disputed issues is an integral part of our judicial system, allowing for review, contemplation and determination of cases by a panel of justices or judges as opposed to a single one. Requiring the litigant to seek final determination of the disputed issue through the appellate process should not be looked upon as onerous, as argued by plaintiff.

I also disagree with the majority that the additional time spent pursuing an appeal could result in the expiration of the statute of limitations on a legal malpractice claim. That issue is easily remedied. Nothing prevents plaintiff from commencing a separate malpractice action that may be stayed until the resolution of the underlying action, which includes resolution of any issues on appeal. Second, plaintiff may also obtain a waiver of the statute of limitations from defendants so that a subsequent legal malpractice action would not be time-barred.

I also disagree with the majority that requiring plaintiff to exhaust his appellate remedies interferes with settlement and potentially conflicts with an injured party's duty to mitigate damages. It is speculative to assume that a certain litigation posture will interfere with settlement over another litigation posture. Who is to say that a case is more difficult to settle when

there are outstanding appellate issues that may result in the reversal of the trial court's decision versus when there is a legal malpractice case that must resolve both legal malpractice issues and medical malpractice issues, as well as appellate issues. One may easily conclude that the latter interferes more with settlement than the former. I also disagree with the majority that plaintiff's pursuit of an appeal here conflicts with his duty to mitigate damages. The proper way to mitigate damages in this case would have been for plaintiff to pursue his appeal and also to continue to litigate his remaining cause of action, which may have resulted in an award of some or all of his damages. In the event that he recovered all of his damages, a subsequent legal malpractice case would be unnecessary. In the event that he recovered partial damages, the issues and damages recoverable in a subsequent legal malpractice case would be limited. Plaintiff violated his duty to mitigate by discontinuing his remaining cause of action and foregoing his appeal in the underlying action.

I therefore would reverse the order insofar as appealed from and grant defendants' motion and cross motion for summary judgment seeking dismissal of the complaint.

Entered:  July 19, 2013                          Frances E. Cafarell
                                                 Clerk of the Court